Lucio Ricardo ALVAREZ–SANTOS, aka
Luciano Ricardo Alvarez aka Lucio
Ricardo Alvarez, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 01–71478.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed June 20, 2003.

Frank P. Sprouls, Law Office of Ricci & Sprouls, San Francisco, CA, for the petitioner-appellant.

Patrick Shen and Michelle Slack, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for the respondent-appellee.

Before NOONAN, BERZON, and TALLMAN, Circuit Judges.

## OPINION

BERZON, Circuit Judge.

Lucio Ricardo Alvarez–Santos ("Alvarez–Santos") petitions for review of an Immigration and Naturalization Service ("INS") order removing him for having entered the United States illegally. The pivotal question is whether we lack jurisdiction over his petition because the Board of Immigration Appeals ("BIA"), for another purpose (the denial of voluntary departure), determined that Alvarez–Santos had committed a crime of moral turpitude. We conclude that the pertinent section of the Immigration and Nationality Act ("INA"), as amended by § 306(a) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 110 Stat. 3009–546, 607 (1996), (codified at 8 U.S.C. § 1252(a)(2)(C)),[1] strips us only of jurisdiction to review orders of removal predicated on commission or admission of a crime, not orders of removal not so predicated.

Reaching the substance of Alvarez–Santos's petition, however, we deny it as without merit.

## BACKGROUND

Alvarez–Santos, a citizen of Guatemala, illegally entered the United States in 1990. He eventually settled in San Rafael, California with Francisca Lopez, another Guatemalan immigrant and worked as a gardener. He and Lopez have since had two children, both United States citizens.

In 1993, Alvarez–Santos filed an application for political asylum, claiming that he feared persecution if forced to return to Guatemala. The application represented that he and his family had been active in the political party "MAS," and that his father and brother were members of the local Civil Defense Patrol, a government-

---

1. All statutory citations are to Title 8 of the United States Code, unless otherwise noted.

backed organization opposed to the guerillas. Both these affiliations, he maintained, made him a target for the local guerilla group "URNG." The record does not show what action was taken on this application, if any.

Four years later, the Marin County District Attorney's Office charged Alvarez–Santos with spouse abuse.[2] Alvarez–Santos initially pleaded guilty but was then permitted to withdraw his plea and enter a "batterer's reeducation program." After Alvarez–Santos successfully completed the program, the District Attorney dismissed the charge.

The INS thereafter initiated removal proceedings. The Notice to Appear ("NTA") charged Alvarez–Santos with removability on two grounds: (1) entering the United States without permission; and, (2) conviction of a crime of moral turpitude. He conceded removability on the first ground but challenged the second.

Whether he was removed for having entered without permission or for having committed a crime of moral turpitude was potentially of great significance to Alvarez–Santos. If found removable on the latter ground rather than the former, Alvarez–Santos would be ineligible for cancellation of removal, see § 1229b(b)(1)(C), or voluntary departure, see § 1229c(b)(1)(B), and faced detention prior to removal, see § 1231(a)(2). If unable to depart voluntarily, he would have been ineligible to seek admission to the United States for ten years following his removal. See § 1182(a)(9)(A)(ii). The reasons for removal can have other dramatic consequences: An alien removed for having committed an aggravated felony is ineligible to return to the United States for twenty years. See § 1182(a)(9)(A)(i).

Having conceded removability, Alvarez–Santos requested asylum or withholding of removal. In the new asylum application he asserted that he, his father, and his brother were all members of the Civil Defense Patrol, and that he had received threatening letters from a guerilla group called "ORPA." The letters demanded money and promised death if he did not pay. Alvarez–Santos averred that he fled Guatemala because he did not have the money ORPA demanded and could not obtain it. He feared ORPA would attempt to hurt or kill him if he returned.

Testifying in support of his asylum application at his removal hearing, Alvarez–Santos stated that he feared reprisals from ORPA if he returned to Guatemala; that the letters he had received demanded that he either pay money to ORPA or join the guerilla group; that he was part of the Civil Defense Patrol, and that neither he nor his family had ever participated in politics or expressed any political opinions. He attributed the contrary assertions in his 1993 asylum application to an unscrupulous preparer who filled out the application without listening to Alvarez–Santos's complete narration of the events that led him to flee Guatemala.

At the very end of his direct testimony, after a short break, Alvarez–Santos was asked by his attorney if he had anything

---

**2.** Alvarez–Santos was charged with violating California Penal Code § 273.5, which in 1998 provided:

> Any person who willfully inflicts upon his or her spouse, or . . . upon any person with whom he or she is cohabiting, or . . . upon any person who is the mother or father of his or her child, corporal injury resulting in a traumatic condition, is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not more than one year, or by a fine of up to six thousand dollars ($6,000) or by both.

else to add. He then proffered for the first time the following story: In 1988, shortly after he received the last of the threatening letters from ORPA, some men came looking for him at his house. They wore black clothes, carried guns, and called for him by name. Alvarez–Santos fled on foot, but the black-clothed men caught him and stabbed him in the shoulder. They did not kill him because they wanted him alive. Alvarez–Santos spent four or five days in the highlands of Guatemala dressing his wounds with herbs and then fled to Mexico. On the basis of these events he feared that, if he returned to Guatemala, ORPA might again find and injure him or, this time, kill him.

The IJ denied Alvarez–Santos's request for asylum. Petitioner's testimony was not credible, found the IJ, and he therefore had not demonstrated a well-founded fear of persecution on a protected ground. The IJ also denied Alvarez–Santos's request for withholding of removal, because he necessarily could not meet the more stringent requirements for withholding of removal. The IJ therefore ordered him removed for having entered the United States illegally. She also found, however, that Alvarez–Santos was *not* removable for having committed a crime of moral turpitude, as the diversion to the batterer's reeducation program was not a conviction. Finally, the IJ determined Alvarez–Santos to be a person of good moral character, notwithstanding the spouse abuse incident, and granted his request for voluntary departure.

Alvarez–Santos appealed to the Board of Immigration Appeals on the asylum and withholding of removal issues. The INS cross-appealed the voluntary departure question. The INS did not challenge the IJ's finding that Alvarez–Santos had not been convicted of a crime. Instead, the INS's appeal was directed specifically at the IJ's discretionary decision that Alva-

rez–Santos merited voluntary departure, maintaining that the facts surrounding the spousal abuse incident counseled against a favorable exercise of discretionary relief.

The BIA affirmed the denials of asylum and withholding of removal but reversed the grant of voluntary departure. Deciding the voluntary departure issue on a ground the INS had not raised, the BIA held that Alvarez–Santos had admitted the essential elements of a crime of moral turpitude (spouse abuse), and thus was statutorily ineligible for voluntary departure. Alvarez–Santos appeals both aspects of the BIA's decision.

## DISCUSSION

### I. Removal Order

#### A. Jurisdiction

■ The initial question is whether we have jurisdiction to review the BIA's decisions denying Alvarez–Santos's requests for asylum and withholding of removal. The INS argues that under § 1252(a)(2)(C) we do not.

That section provides:

[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

§ 1252(a)(2)(C). According to the INS, the BIA's finding on appeal of the grant of voluntary departure that Alvarez–Santos had admitted the essential elements of a crime of moral turpitude renders him "re-

movable by reason of having committed a criminal offense." In other words, the INS's position is that § 1252(a)(2)(C) precludes judicial review of an otherwise reviewable removal order where the record establishes that the individual could have been *but was not* ordered removed for having committed a covered criminal offense.

The scope of § 1252(a)(2)(C) in this regard is "not entirely clear." *Calcano–Martinez v. I.N.S.,* 533 U.S. 348, 350 n. 2, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001). On the one hand, "removable by reason of having committed a criminal offense" could refer back to the "reason" for the "final order of removal" under review. Alternatively, although less probably given the juxtaposition of "final order of removal" and "removable" in the same sentence, the "removable" phrase could refer to circumstances that exist but were *not* the basis for the "final order of removal." The "background principles of statutory construction and constitutional concerns" must guide a determination of the scope of § 1252(a)(2)(C). *Calcano–Martinez,* 533 U.S. at 350 n. 2, 121 S.Ct. 2268. In approaching the statutory language and context, several principles of statutory construction, some particular to immigration law, are of some aid.

First, there is a "strong presumption in favor of judicial review of administrative action." *I.N.S. v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). Second, "there is a 'longstanding principle of construing any ambiguities in deportation statutes in favor of the alien.'" *Montero–Martinez v. Ashcroft,* 277 F.3d 1137, 1141 (2002) (quoting *St. Cyr,* 533 U.S. at 320, 121 S.Ct. 2271). Accordingly, "we ... construe narrowly restrictions on [our] jurisdiction" to review INS

orders removing aliens who have been in this country, legally or otherwise. *Montero–Martinez,* 277 F.3d at 1141.

With those principles in mind, we turn to the term "removable" as it appears in § 1252(a)(2)(C). Although § 1252 does not define the term "removable," § 1229a does, to a limited extent. Section 1229a provides in pertinent part that "In [§§ 1229a and 1229b] ... the term 'removable' means in the case of an alien not admitted to the United States, that the alien is inadmissible under section 1182 of this title [and] ... in the case of an alien admitted to the United States, that the alien is deportable under section 1227 of this title." § 1229a(e)(2). We generally presume that Congress intends the same meaning when it uses the same word throughout a statute. *See Montero–Martinez,* 277 F.3d at 1142. Applying § 1229a's definition to § 1252(a)(2)(C) cannot, however, resolve the present issue. That minimal definition primarily makes clear that "removable" is a term that encompasses both inadmissible and deportable aliens. The section does not address directly the issue at the heart of this case—whether an alien is "removable" by reason of having committed a criminal offense only when an IJ has adjudged him removable on that basis—although, as we shall see, it is of some assistance in answering that question.

A close examination of the statute as a whole reveals that "removable by reason of having committed" in § 1252(a)(2)(C) refers to an administrative determination of the basis for an alien's removal. The "final orders of removal" to which § 1252(a)(2)(C) refers result from proceedings governed by § 1229a.[3] And § 1229a makes clear that whether an alien is "re-

---

**3.** Section 1229a governs removal proceedings initiated against criminal aliens both inside and outside prison. *See* §§ 1228(a)(1), 1229a.

movable," and why, is a conclusion that the *agency* must make, not an after-the-fact determination by an appellate court.

Section 1229a provides that "[a]t the conclusion of the proceeding the immigration judge *shall decide* whether the alien is *removable* .... The *determination* of the immigration judge shall be based only on the evidence produced at the hearing." § 1229a(c)(1) (emphasis added). Plugging in § 1229a(e)(2)'s definition of "removable," one surmises that removability is a determination that must rest on one of two prior subsidiary findings, namely that the alien either is inadmissible for one of the reasons enumerated in § 1182 or deportable for one of the reasons enumerated in § 1227. Taken together, then, the statutory requirements—that an IJ "decide" whether an alien is "removable;" that the IJ may base that "determination" only on evidence produced during the removal hearing; and that removability depends on specific statutory findings—all indicate that whether an alien is "removable" on a specific ground must be decided in the course of agency removal proceedings. Section 1229a's use of the term "removable" suggests, in other words, that a person is not "removable" on a particular basis unless or until the IJ determines that he is.

■ This interpretation is reinforced by the second half of § 1252(a)(2)(C) itself. That language limits judicial review with regard to removal orders against aliens who are "removable" only for having committed a crime covered in § 1182(a)(2) or certain subsections of § 1227(a)(2). Section 1229a, however, provides that an IJ may determine an alien to be removable, and thus order him removed, for any of the numerous criminal and non-criminal grounds provided in §§ 1182 and 1227. *See* § 1229a(e)(2); § 1182(a)(1)—(a)(10); § 1227(a)(1)—(a)(6). Thus, § 1252(a)(2)(C) deprives us of jurisdiction to review only a specific subset of the removal orders which might result from a § 1229a proceeding, namely those in which there is an administrative determination that the alien is removable on criminal grounds.

Our decision in *Briseno v. I.N.S.*, 192 F.3d 1320 (9th Cir.1999), is not to the contrary, but instead supports this conclusion. *Briseno* held it sufficient for purposes of a provision closely analogous to § 1252(a)(2)(C)[4] that the INS had ordered the petitioner deported on criminal grounds, even though the removal order did not characterize the offense as an "aggravated felony" to which the jurisdiction-stripping provision applied. *See id.* at 1322. There was no dispute that the charging documents alleged that the petitioner was deportable for having committed that crime or that the crime fell within the INA's definition of an "aggravated felony." *See id.* at 1322. Moreover, "proof of that conviction was essential to the deportation order." *Id.* at 1323. The only issue in *Briseno*, therefore, was whether the charging document's failure to characterize the crime as an aggravated felony prevented the analogous jurisdiction-stripping provision from applying. We held that it did not. *Id.*

In *Briseno*, however, we agreed with the First Circuit that the phrase "deportable by reason of having committed" did not

---

4. The provision at issue in *Briseno* was IIRI-RA's transitional rule 309(c)(4)(G). That section provided that:

   [T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section [1182(a)(2)] or section [1227(a)(2)(A)(iii)], (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of [September 30, 1996])....

110 Stat. 3009–546, 626–27 (1996).

mean "potentially susceptible to being deported by reason of." *Id.* (quoting *Choeum v. I.N.S.*, 129 F.3d 29, 38 (1st Cir. 1997)). In other words, we said that an alien is not deportable on a specific ground simply because the agency could deport him on those grounds, although it did not.

In this case, the removal order did not depend on any finding that Alvarez–Santos had committed a criminal offense, but was premised only on his illegal entry. The INS did not appeal the ruling that Alvarez–Santos was not removable on grounds of having committed a criminal offense. Thus, to the extent *Briseno* applies here, it indicates that the petitioner is not "removable by reason of having committed" a criminal offense, because proof of a crime was not essential to the removal order. While Alvarez–Santos was "potentially susceptible to being deported by reason of" his spouse abuse conviction, that is not why he was deported.

There is another reason to reject the INS's position: we could not find Alvarez–Santos "removable" without implicating due process concerns similar to those we recognized in *Campos–Sanchez v. I.N.S.*, 164 F.3d 448, 450 (9th Cir.1999). In *Campos–Sanchez* we held that the BIA may not *sua sponte* reverse an IJ's favorable credibility finding, for reasons not raised before the IJ, without first offering the petitioner a chance to address those issues. *See id.* There, although the IJ denied the petitioner's asylum application, both the INS and the IJ had expressly found the petitioner credible. *See id.* He therefore had no reason to believe his credibility was at issue in his appeal to the BIA, and no reason to defend the IJ's findings in his appearance before the BIA. *See id.* We concluded that the decision to deny Campos–Sanchez's asylum application based solely on an adverse credibility determination made in the first instance by the BIA deprived the petitioner of the "full and fair

hearing" guaranteed him by the Fifth Amendment. *See id; Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (Fifth Amendment Due Process Clause applies to aliens in deportation proceedings).

Section 1252(d) entitles Alvarez–Santos to judicial review of a removal order against him unless his case comes within one of the statutory exceptions. Due process requires that he have the opportunity to address in a meaningful manner the facts that might deprive him of that review. Indeed, we have held that § 1252(a)(2)(C) does not apply where an alien was neither charged with nor found removable on grounds that might implicate § 1252(a)(2)(C). *See Chowdhury v. I.N.S.*, 249 F.3d 970, 975 (9th Cir.2001). Even though the petitioner in *Chowdhury* had in fact been convicted of a crime that fell within the INA's definition of an "aggravated felony," we held that the INS could not raise that conviction for the first time on appeal before this court, as a basis for precluding judicial review. *See id.* To have held otherwise, we said, would have deprived the petitioner of fair notice and an administrative hearing. *See id.*

The INS charged Alvarez–Santos as removable on criminal grounds, but it lost on that ground before the IJ and did not appeal the issue to the BIA. Alvarez–Santos therefore had no opportunity to brief the question whether the IJ's rejection of the criminal offense ground for removal was correct and did not do so.

That the INS challenged the IJ's discretionary grant of voluntary departure does not erase this concern. The INS's regulations provide that where the "appeal concerns discretionary relief, the appellant must state whether the alleged error relates to statutory grounds of eligibility or to the exercise of discretion." 8 C.F.R. 3.3(b) (2002). Here, the INS quite clearly

assigned error on the latter ground and not the former: Before the BIA, the INS argued only that the IJ had abused her discretion in deciding to grant Alvarez–Santos voluntary departure, maintaining that the balance of positive and negative factors—including the facts surrounding the spouse abuse incident—did not support a grant of discretionary relief from removal. The IJ's determination that Alvarez–Santos had not been convicted of a crime of moral turpitude was thus never challenged on appeal.

■ As a consequence of this sequence of events, Alvarez–Santos could quite reasonably have determined that the issue whether he had been convicted of a removable offense had been conclusively and finally decided in his favor. Indeed, the INS is deemed to have abandoned any arguments not raised in its appeal to the BIA. *See In re Medrano*, 20 I & N Dec. 216, 218–20 (1990) (considering as "abandoned" INS's arguments in motion to reconsider that it did not raise in initial appeal). It is therefore not surprising that Alvarez–Santos made no effort to defend the IJ's favorable finding in his brief to the BIA or his opening brief before this court.[5]

■ Yet, the INS would have us interpret § 1252(a)(2)(C) to permit it to resurrect the criminal conviction issue now, solely to cut off judicial review. As *Campos–Sanchez* and *Chowdhury* indicate, such an interpretation of § 1252(a)(2)(C) would raise serious constitutional concerns because it would potentially deprive an alien of the judicial review guaranteed him

by statute without the opportunity to address the facts underlying that deprivation. Where fairly possible, we construe statutes to avoid such concerns. *See St. Cyr*, 533 U.S. at 299–300, 121 S.Ct. 2271.

■ For the foregoing reasons, we hold that § 1252(a)(2)(C) does not deprive us of jurisdiction to review Alvarez Santos's appeal in this case. That section precludes judicial review only when an alien is actually determined to be removable and ordered removed on the basis of a covered criminal act. As neither is true in this case, we may review the merits of Alvarez–Santos's applications for asylum and withholding of removal.

### B. Merits Of The Asylum And Withholding Of Removal Claims

■ Turning to the merits of Alvarez–Santos's petition, we conclude that there is substantial evidence in the record to support the BIA's decision to deny Alvarez–Santos's applications for asylum and withholding of removal.

The INA, § 1158(a), authorizes the Attorney General to grant asylum to an alien who is unwilling to return to his country of origin because of a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 1101(a)(42)(A). To show that his fear is well-founded, Alvarez–Santos must demonstrate that it is both subjectively genuine and objectively reasonable. *See Pal v. I.N.S.*, 204 F.3d 935, 937–38 (9th Cir.2000);

---

**5.** The circumstances in this case are unusual, as the INS did not raise the crime of moral turpitude conviction issue even as to the voluntary departure issue. Even if it had done so, however, there would still be due process concerns: The consequences of having committed a crime of moral turpitude differ with respect to a voluntary departure determination and a determination of the ground for

removal, so the incentives to challenge the INS's position on the issue vary as well. Absent notice in the course of the administrative proceedings that the alien could be considered removable on the ground that he committed an offense covered by § 1252(a)(2)(C), the alien lacks full opportunity to address that issue before the issue operates to preclude judicial review.

*Ghaly v. I.N.S.*, 58 F.3d 1425, 1428 (9th Cir.1995) (alien bears burden of proof).

We uphold the BIA's decisions if they are supported by reasonable, substantial and probative evidence in the record. *See I.N.S. v. Elias–Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). We accord similar deference to a credibility determination, *see Gui v. I.N.S.*, 280 F.3d 1217, 1228 (9th Cir.2002), so long as it is based on a specific, cogent reason, *see de Leon–Barrios v. I.N.S.*, 116 F.3d 391, 393 (9th Cir.1997), and will uphold an adverse credibility determination where it is based on serious inconsistencies in the applicant's testimony that go to the heart of his application. *See Pal*, 204 F.3d at 938.

The BIA based its adverse credibility finding primarily on a major inconsistency in Alvarez–Santos's testimony. The Board discredited entirely Alvarez–Santos's last-minute, uncorroborated story of his encounter with rebels.

Alvarez–Santos had omitted the stabbing incident, which the IJ described as "pivotal," from both his prior asylum applications. Omissions from asylum applications are often not a sufficient basis for discrediting later testimony. *See Bandari v. I.N.S.*, 227 F.3d 1160, 1167 (9th Cir. 2000); *Garrovillas v. I.N.S.*, 156 F.3d 1010, 1013 (9th Cir.1998). This court has recognized that asylum applications are frequently filled out by "poor, illiterate people who do not speak English and are unable to retain counsel," and who may seek the assistance of preparers. *Aguilera–Cota v. I.N.S.*, 914 F.2d 1375, 1382 (9th Cir.1990). This court has also recognized that preparers, whether lawyers or non-lawyers, are not always scrupulous, and that as a result, asylum applicants may be compelled to explain facts the preparer included in the application. *See Garrovillas*, 156 F.3d at 1014. Inconsistencies due to an unscrupulous preparer, without other evidence of dishonesty (such

as evasiveness in answering questions, *see Bandari*, 227 F.3d at 1166), do not provide a specific and cogent basis for an adverse credibility finding. *Garrovillas*, 156 F.3d at 1014.

Standing alone, the inconsistencies between Alvarez–Santos's asylum applications and his later testimony would not comprise specific, cogent reasons for the BIA's adverse credibility finding. Alvarez–Santos's 1993 application was quite clearly completed by someone else—a preparer named Maurice Castellon. The fact that it is consistent in many places with Alvarez–Santos's 1998 application is not at all incompatible with his assertion that Mr. Castellon took down basic information and then told him "I can do it from this."

Here, however, there were additional compelling reasons for discrediting Alvarez–Santos's testimony concerning a dramatic, pivotal event that had been omitted from his asylum applications. It is simply not believable that an applicant for asylum would fail to remember, and thus to include in either of his two asylum applications *or* his principal testimony, a dramatic incident in which he was attacked, stabbed, and fled to the mountains—the very incident that precipitated his flight from Guatemala—only to be reminded of it at the conclusion of his testimony, after taking a break, and, assertedly, because of an itch in his shoulder.

The BIA thus correctly discredited his testimony. The reasons for discrediting Alvarez–Santos's testimony are specific and cogent. Because Alvarez–Santos's testimony was properly discredited, and because he proffered no other evidence to support his application, there is substantial evidence supporting the BIA's finding that he did not demonstrate a well-founded fear of persecution.

Accordingly, we affirm the BIA's decision to deny Alvarez–Santos's application

for asylum. Because Alvarez–Santos's failure to satisfy the "well-founded fear" standard applicable to asylum applications necessarily precluded his satisfying the more stringent "clear probability of persecution" that withholding of removal requires, we affirm as well the BIA's denial of withholding of removal. *See* § 1231(b)(3)(A) ("the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country"); *de Leon–Barrios,* 116 F.3d at 394 (the standard for withholding of removal is "more rigorous" than standard for asylum); *Ghaly,* 58 F.3d at 1429 (withholding of removal requires showing "clear probability of persecution").

## II. Denial of Voluntary Departure

■ The BIA reversed the IJ's grant of voluntary departure because it found that Alvarez–Santos had committed a crime of moral turpitude and was thus statutorily ineligible for voluntary departure. Alvarez–Santos appeals that decision; the INS contends that we lack jurisdiction to review it.

The INA provides that "[n]o court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure ...." § 1229c(f). Section 1229c(f)'s restriction on judicial review is much broader than that of § 1252(a)(2)(C): The latter section divests us of jurisdiction to review *certain* "final orders of removal," while the former section divests us of jurisdiction over any "appeal from denial of a request for an order of voluntary departure." This language, we have said, indicates that "Congress really wanted to eliminate judicial review over all determinations made by the BIA, discretionary

and nondiscretionary ..." *Montero–Martinez,* 277 F.3d at 1143. Section 1229c(f) therefore precludes our review of Alvarez–Santos's appeal regarding the order of voluntary departure.[6]

## CONCLUSION

For the foregoing reasons, we find that we have jurisdiction to review the BIA's decisions to deny Alvarez–Santos's applications for asylum and withholding of removal. They are supported by substantial evidence in the record. Further, we do not have jurisdiction to review the BIA's decision to deny voluntary departure. Therefore, the decision of the BIA is

AFFIRMED.

---

**6.** As we have noted, the BIA denied voluntary departure on a ground not argued by the INS and in apparent violation of its own precedent decisions. We do not reach the question whether habeas corpus would be available regarding the voluntary departure issue. *See Flores–Miramontes v. I.N.S.,* 212 F.3d 1133, 1137–38 (9th Cir.2000).