Luis TORO–ROMERO, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–74460.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 5, 2004.

Filed Aug. 30, 2004.

Kaye A.Y. Evans, Beverly Hills, CA, for the petitioner.

Paul Fiorino, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for the respondent.

Before: NOONAN, KLEINFELD, and BERZON, Circuit Judges.

BERZON, Circuit Judge:

Appellant Luis Toro–Romero appeals the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ's") determination that he was inadmissible because he had "falsely represented[ ] himself ... to be a citizen of the United States" in order to gain entry to the United States.

## I. Factual and Procedural Background

Toro–Romero, a native and citizen of Mexico, was one year old when he entered the United States in 1974. In 1989, he became a lawful permanent resident. Four years later, Toro–Romero pleaded guilty to having violated California Penal Code § 459, a criminal statute prohibiting burglary. The conviction was expunged in 1998.

On December 13, 1997, Toro–Romero took a day-trip to Mexico. At the border, he used another person's valid California birth certificate and claimed to be a United States citizen. According to Toro–Romero, he did this because he had lost his legal permanent resident card and did not know how to re-enter the United States without it. The border guards determined that Toro–Romero was not, in fact, a U.S. citizen and that the birth certificate was not his.

Toro–Romero was then served with a Notice to Appear. The Notice charged him with being inadmissible (1) as an alien convicted of a crime involving moral turpitude, 8 U.S.C. § 1182(a)(2)(A)(i)(I), and (2) as an alien who falsely represented himself as a U.S. citizen for a purpose or benefit under the Immigration and Nationality Act ("INA") or any other Federal or State law, 8 U.S.C. § 1182(a)(6)(C)(ii).[1]

1. 8 U.S.C. §§ 1182(a)(2)(A)(i)(I) and (a)(6)(C) state in relevant part:

(a) Classes of Aliens Ineligible for Visas or Admission.—Except as otherwise provided in this Act, aliens who are inadmissible under the following paragraphs are ... ineligible to be admitted to the United States:
(2) Criminal and related grounds.—
(A) Conviction of certain crimes.—

(i) In general.—Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—
(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, ... is inadmissible.

The IJ found Toro–Romero inadmissible (1) under 8 U.S.C. § 1182(a)(2)(A)(i)(I), because he had been convicted of a crime of moral turpitude, and (2) under 8 U.S.C. § 1182(a)(6)(C)(ii), because he had "falsely represented[ ] himself . . . to be a citizen of the United States" in order to gain entry to the United States. The IJ also pretermitted Toro–Romero's application for relief under 8 U.S.C. § 1229b, a provision that allows cancellation of removal for certain permanent residents.[2] The IJ reached this conclusion because "any period of continuous residence . . . in the United States" ends "when the alien [commits] an offense referred to in Section 212(a)(2) that renders the alien inadmissible to the United States under Section 212(a)(2)." See 8 U.S.C. § 1229b(d)(1). Toro–Romero gained lawful temporary resident status in 1987 and permanent legal resident status in 1989, but was then convicted of burglary (a crime involving moral turpitude, according to the IJ) in 1993, which the IJ held broke the period of continuous residence. Because Toro–Romero therefore had not "resided in the United States continuously for seven years after having been admitted in any status," the IJ concluded, he was ineligible for cancellation of removal.

Toro–Romero appealed the IJ's decision to the BIA, arguing, among other things, that the IJ abused her discretion by not granting his requests for cancellation of removal under 8 U.S.C. § 1229b(a) and for waiver of inadmissibility under 8 U.S.C. § 1182(i).[3] He also claimed that neither the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104 132, 110 Stat. 1214, nor the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),

(6) Illegal entrants and immigration violators.—

. . .

(C) Misrepresentation.—

(i) In general.—Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) . . . admission into the United States . . . is inadmissible.

(ii) Falsely claiming citizenship.—

(I) In General

Any alien who falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this Act . . . or any other Federal or State law is inadmissible.

(II) Exception

In the case of an alien making a representation described in subclause (I), if . . . the alien permanently resided in the United States prior to attaining the age of 16, and the alien reasonably believed at the time of making such representation that he or she was a citizen, the alien shall not be considered to be inadmissible under any provision of this subsection based on such representation.

(iii) Waiver authorized.—For provision authorizing waiver of clause (i), see subsection [8 U.S.C. § 1182](i).

2. U.S.C. § 1229b(a) states:

(a) Cancellation of Removal for Certain Permanent Residents.—The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—
(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,
(2) has resided in the United States continuously for 7 years after having been admitted in any status, and
(3) has not been convicted of any aggravated felony.

3. 8 U.S.C. § 1182(i) states:

(1) The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) [see n. 1, supra ] in the case of an immigrant who is the spouse, son, or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission to the United States of such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such an alien. . . .

Pub.L. 104–208, 110 Stat. 3009–546,[4] can be applied retroactively to deprive him of his right to apply for a waiver of removal. Such a waiver of removal had been available to certain lawfully admitted, permanent residents under 8 U.S.C. § 1182(c),[5] a provision of the INA that was subsequently repealed. Finally, Toro–Romero argued that the IJ erred in concluding that he was convicted of a crime of moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I) (stating that aliens convicted of a crime involving moral turpitude are ineligible for admission).

The BIA affirmed the IJ's conclusion that Toro–Romero was inadmissible, but on the sole ground that he had falsely represented himself to be a citizen of the United States. The Board held that Toro–Romero was not eligible for the exception to this inadmissability provision, 8 U.S.C. § 1182(a)(6)(C)(ii)(II), noting: "Under the Act, an alien who falsely claims that he is a United States citizen to obtain a benefit under the Act may be admissible if the alien establishes that he or she 'reasonably believed at the time of making' the representation that he or she was a citizen of the United States." The BIA concluded that respondent's "mistake of judgment" did not satisfy the exception. Finally, the BIA recited that, "[a]s [Toro–Romero's] falsely claiming United States citizenship cannot be waived as a ground of inadmissibility and provides an independent ground for his removability, we need not decide any other issue raised on appeal."

Toro–Romero appeals the BIA's decision, making the argument, among others, that as a lawful permanent resident, Toro–Romero was not "seeking admission" when he tried to re-enter the United States, and thus could not be found "inadmissible" as charged under 8 U.S.C. § 1182(a)(6)(C)(ii).

## II. *Analysis*

### A. *Jurisdiction*

■ Our first inquiry must be whether we have jurisdiction to review the BIA's decision. *See Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir.2000) (holding that a federal court retains its jurisdiction to determine whether or not it has jurisdiction). According to 8 U.S.C. § 1252(a)(2)(C), we do not "have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 212(a)(2) [8 U.S.C. § 1182(a)(2) ]." Section 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), in turn, covers convictions for crimes involving moral turpitude. *See supra* n. 1. If Toro–Romero had been ordered removed solely because he had committed a crime involving moral turpitude, we would not have jurisdiction to review the agency's decision.

On the other hand, we have not been stripped of jurisdiction to review a final removal order based on 8 U.S.C. § 1182(a)(6)(C)(ii), false representation of citizenship. *See generally* 8 U.S.C. § 1252

---

4. Both of these acts "contain comprehensive amendments to the Immigration and Nationality Act ("INA"), 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq.*" *INS v. St. Cyr*, 533 U.S. 289, 292, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

5. 8 U.S.C. § 1182(c) was repealed by § 304(b) of IIRIRA. It stated in part:
(c) Aliens lawfully admitted for permanent residence who temporarily proceeded

abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (3) and (9)(C) [relating to terrorism, espionage, and child abduction] ).

(delineating the scope of federal court jurisdiction to review removal orders). Again, if Toro–Romero had been ordered removed solely because of his false representation at the border, we would have jurisdiction· to review the agency's decision.

■ In Toro–Romero's case, of course, matters are not so clear-cut. While the IJ found Toro–Romero removable on both grounds (i.e., for having been convicted of a crime involving moral turpitude and for falsely representing himself as a U.S. citizen), the BIA only affirmed his removal on the false representation ground. Therefore, the sole ground for the final order of removal is Toro–Romero's false representation at the border. 8 U.S.C. § 1101(a)(47)(B)(i) (stating that an "order of deportation" becomes final upon "a determination by the Board of Immigration Appeals affirming such order"); 8 C.F.R. § 241.1(a) ("An order of removal made by the immigration judge ... shall become final ... [u]pon dismissal of an appeal by the Board of Immigration Appeals....").[6]

In *Alvarez–Santos v. INS*, 332 F.3d 1245 (9th Cir.2003), we were faced with a somewhat similar procedural posture. There, the IJ ordered Alvarez–Santos removed for having entered the United States illegally, found he was not removable for having committed a crime of moral turpitude, and granted his request for voluntary departure. *Id.* at 1249. On appeal, the BIA affirmed the denials of asylum and withholding of removal, but held Alvarez–Santos ineligible for voluntary departure because he had admitted the essential elements of a crime of moral turpitude. *Id.* The INS argued on review that this court was obliged independently to determine whether an alien was "removable"—meaning "could have been removed"—for having committed a crime involving moral turpitude. *Id.* at 1249–50. Not convinced, we held that "a person is not 'removable' on a particular basis unless or until the IJ determines that he is." *Id.* at 1251. We therefore asserted jurisdiction, as Alvarez–Santos had not been removed for having committed a crime of moral turpitude. *Id.* at 1253.

■ In the proceedings against Toro–Romero, the IJ did find Toro–Romero removable due to his burglary conviction. The BIA, however, conducted a de novo review of the IJ's legal conclusions,[7] issued a decision on the merits dismissing Toro–Romero's appeal, expressly declined to review the IJ's determination that Toro–Romero was removable because of his burglary conviction, and held Toro–Romero's false representation of citizenship an independent and sufficient ground for removal. Our review is limited to the BIA's decision. *Duarte de Guinac v. INS*, 179 F.3d 1156, 1160 (9th Cir.1999); *see also Awe v. Ashcroft*, 324 F.3d 509, 514 (7th Cir.2003)

---

**6.** In *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 884 (9th Cir.2003), this court held that the BIA does not have the authority to issue orders of removal in the first instance, but may only affirm orders of removal issued by the IJ. We do not suggest otherwise here. Rather, in dismissing an appeal from an order of removal, the BIA makes that order of removal final on the grounds presented by the BIA in its dismissal (or, in a stream-lined case, *see* 8 C.F.R. § 1003.1(e)(4), the IJ's grounds adopted expressly by the BIA).

**7.** Under 8 C.F.R. § 1003.1(d)(3)(ii), "[t]he Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*." But, under 8 C.F.R. § 1003.1(d)(3)(i), "[t]he Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous."

("Since our appellate review is limited to the BIA's final orders of removal, we decline to look beyond the BIA's stated, procedural reasons for dismissing Awe's appeal and will not undertake a review of the merits of Awe's case as decided by the IJ.").

Whether or not the BIA could have found Toro–Romero inadmissible because of his burglary conviction, it did not. *Alvarez–Santos*, 332 F.3d at 1252 ("[A]n alien is not deportable on a specific ground simply because the agency could deport him on those grounds, although it did not."). As Toro–Romero thus is not, pursuant to *Alvarez–Santos*, "removable by reason of having committed a criminal offense in section 212(a) [8 U.S.C. § 1182(a)]," we do have jurisdiction to review his removal order. *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) ("That [simple but fundamental rule of administrative law] is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").[8]

■ Toro–Romero specifically challenges the IJ's and BIA's characterization that he, a lawful permanent resident, was "seeking admission to the United States" when he attempted to re-enter the country. Review of whether Toro–Romero was "seeking admission," as that phrase is used in the INA, is a review of a legal determination, and does not involve review of a discretionary determination by the agency. *See Falcon Carriche v. Ashcroft*, 350 F.3d 845, 853 (9th Cir.2003) ("[Post–IIRIRA, we] may, for example, review whether an alien has met the 'ten years of continuous physical presence' requirement because

this is an objective, factual inquiry."); *Montero–Martinez v. Ashcroft*, 277 F.3d 1137, 1141 (9th Cir.2002) ("[W]e retain jurisdiction [over] the BIA's determination of the purely legal and hence non-discretionary question whether Montero–Hernandez's adult daughter qualifies as a 'child' for the purposes of 8 U.S.C. § 1229b(b)(1)(D)."). We therefore retain jurisdiction to review it.

### B. *Merits*

#### 1. *Crime Involving Moral Turpitude*

■ The BIA concluded that it did not need to reach any question other than whether Toro–Romero falsely claimed United States citizenship at the border. In reaching this conclusion, the BIA expressly declined to consider whether Toro–Romero had committed a crime involving moral turpitude. However, the INA provides that "[a]n alien lawfully admitted for permanent residence in the United States shall not be regarded as seeking an admission to the United States for purposes of the immigration laws unless the alien ... has committed [a crime involving moral turpitude], unless since such offense the alien has been granted relief [including a cancellation of removal]...." 8 U.S.C. § 1101(a)(13)(C)(v). Thus, the answer to the crime of moral turpitude question was essential in determining whether, as a lawful permanent resident, Toro–Romero was even "seeking admission" on December 13, 1997. If Toro–Romero was not seeking admission, then the service could not remove him as "inadmissible" under 8 U.S.C. § 1182, but, rather, would have to show he was "deportable," for a reason other than "inadmissib[ility] at the time of entry or of adjustment of status," under 8 U.S.C. § 1227. *See* 8 U.S.C. § 1227(a)(1)(A) (pro-

---

**8.** We do not reach the question whether, if the BIA finds an alien removable on two grounds and one ground precludes jurisdiction, we could reach the other.

viding that an alien who was inadmissible at the time of entry or adjustment of status is deportable); 8 U.S.C. § 1227(a)(1)(B)-(7)(B) (listing other grounds upon which an admitted alien may be found deportable).

Removal proceedings under the INA are divided into two categories: Those proceedings seeking to remove inadmissible aliens, and those seeking to remove aliens who are already in and admitted to the United States, but who are nonetheless deportable. *See* 8 U.S.C. § 1229a(a)(3) ("[A] proceeding under this section shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."). Section 212 of the INA, 8 U.S.C. § 1182, lays out the classes of aliens ineligible for admission to the United States, while § 237, 8 U.S.C. § 1227, lays out the classes of aliens "in and admitted to the United States" who are deportable. In Toro–Romero's case, he was both charged and ordered removed as inadmissible under § 1182. No mention was made in the Notice to Appear, the IJ decision, or the BIA decision, of deportation under § 1227. In fact, the Service, in its brief, specifically notes this distinction and argues that 8 U.S.C. § 1227 does not apply to Toro–Romero because he was charged "with *inadmissibility*" under 8 U.S.C. § 1182. Whether Toro–Romero was seeking admission when he falsely represented himself to be a United States citizen depends on whether he had previously committed a crime involving moral turpitude. If he had not, then he was "in and admitted to the United States," and could only have been removed as deportable, not as inadmissible. Possibly applicable in that event would be 8 U.S.C. § 1227(a)(3)(D), the provision of the INA stating that aliens who falsely claim United States citizenship "for any purpose or benefit under this Act . . . [are] deportable."

A number of satellite problems thus orbit around the BIA's decision not to consider whether Toro–Romero had committed a crime involving moral turpitude. If he had not committed such a crime, and was therefore not "seeking admission," he could not be removed as inadmissible under the statute charged in his Notice to Appear, 8 U.S.C. § 1182(a)(6)(C)(ii). While it appears the agency could have brought removal proceedings against Toro–Romero as an admitted, lawfully permanent resident for falsely claiming citizenship under § 1227(a)(3)(D), it did not do so. We cannot speculate on the result of such a proceeding.[9] In addition, if Toro–Romero had not committed a crime involving moral turpitude, and thus was entitled to re-enter the United States, there is a question whether any "purpose or benefit" was served or gained by presenting another individual's U.S. birth certificate.

The BIA therefore erred in not either affirming or reversing the IJ's decision that Toro–Romero had committed a crime involving moral turpitude. Absent a de-

---

**9.** We note that at least two differences between § 1182(a)(6)(C) and § 1227(a)(3)(D) make it possible that the BIA could have reached a different conclusion about Toro–Romero's removability under the two nearly identically worded provisions. First, while an alien seeking admission must prove "clearly and beyond doubt" that he is "entitled to be admitted and is not inadmissible under [8 U.S.C. § 1182]," an admitted alien must prove only "by clear and convincing evidence [that he] is lawfully present in the United States pursuant to a prior admission." 8 U.S.C. § 1229a(c)(2)(B). The Service also bears an additional burden in deportation cases (but not in admissibility cases), to establish "by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, [that] the alien is deportable." 8 U.S.C. § 1229a(c)(3)(A).

termination of the crime of moral turpitude question, it was not possible to decide the propriety of the charge of inadmissibility for falsely claiming citizenship. We therefore grant the petition and remand for determination of the crime of moral turpitude question.

### 2. Cancellation of Removal

▪ Toro–Romero also argues that the BIA erred by not considering his appeal from the IJ's pretermission of his application for cancellation of removal. We agree.

The BIA stated, "As the respondent's falsely claiming United States citizenship cannot be waived as a ground of inadmissibility and provides an independent ground for his removability, we need not decide any other issue raised on appeal." However, cancellation of removal is available to a permanent resident deemed inadmissible or deportable if he "(1) has been an alien lawfully admitted for permanent residence for not less than 5 years, (2) has resided in the United States continuously for 7 years after having been admitted in any status, and (3) has not been convicted of any aggravated felony." 8 U.S.C. § 1229b(a).

The Service, in its brief, clearly states that Toro–Romero has never been charged with removal as an aggravated felon. "Continuous residence," however,"shall be deemed to end ... when the alien has committed an offense" involving a crime of moral turpitude that renders him either inadmissible or removable. 8 U.S.C. § 1229b(d)(1). Toro–Romero was admitted for permanent residence more than five years before he was served with the Notice to Appear and was a resident for more than seven years after his admission as a temporary resident. The determination of statutory continuous residence thus rests, once again, on whether Toro–Romero committed a crime involving moral tur-

pitude. If he did, then the statutory period of continuous residence ended in 1993, less than seven years after he was admitted as a temporary resident and less than five years after he was admitted as a permanent resident.

Because Toro–Romero appealed the IJ's denial of cancellation of removal to the BIA, and because the BIA did not consider it or otherwise foreclose relief under this section of the INA, we remand to the BIA for a determination in the first instance of whether Toro–Romero is eligible for such relief. *See INS v. Ventura,* 537 U.S. 12, 17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) (requiring remand to the BIA to consider the "changed circumstances" issue where the BIA had expressly declined to consider the issue originally).

### III. Conclusion

The BIA erred in not considering (1) whether Toro–Romero, a lawful permanent resident, had committed a crime involving moral turpitude and therefore was "seeking admission" when he tried to re-enter the country, and (2) whether Toro–Romero was eligible for cancellation of removal. We therefore remand to the BIA for further proceedings in accord with this opinion.

REVERSED AND REMANDED.