**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1281

_____

MICHAEL MOSES GRANT,

Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision
of Board of Immigration Appeals,
(Agency No. A215-928-191)
Immigration Judge:  Alice Song Hartye

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on April 12, 2022

Before: AMBRO, SCIRICA, and TRAXLER, <u>Circuit Judges</u>*

(Filed: April 20, 2022)

_____

OPINION**

_____

* Honorable William B. Traxler, Jr., Senior Circuit Judge, United States Court of Appeals
for the Fourth Circuit, sitting by designation.

** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Michael Grant ("Grant") petitions for review of the final order of the Board of Immigration Appeals ("BIA") denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Finding no factual or legal error in the agency decisions, we will deny the petition.

## I.

Grant is a native and citizen of Jamaica. In 2016, he entered the United States on a B-2 visitor's visa and overstayed. In March 2019, Grant was stopped by a state trooper for driving 95 m.p.h. on the Pennsylvania Turnpike. Grant was accompanied by a passenger, Kerron Taylor ("Kerron"). The state trooper found a backpack containing approximately one pound of marijuana and numerous folded packets of U.S. currency in the vehicle. Both men were arrested and prosecuted. Grant ultimately pled guilty in state court to possession of marijuana and driving under the influence of marijuana.

In March 2020, the Department of Homeland Security ("DHS") charged Grant with removability under 8 U.S.C. § 1227(a)(1)(B) as an alien who remained in the United States for a time longer than permitted by his visitor visa. In April 2020, DHS filed additional charges of removability under 8 U.S.C. § 1227(a)(2)(B)(i) as an alien who had been convicted of a controlled substance offense. Through counsel, Grant conceded removability based upon his overstaying his visa, but contested removability based upon his criminal offenses. The immigration judge ("IJ") sustained both charges of removability and designated Jamaica as the country of removal. Grant was advised to submit any applications for relief from deportation by May 5, 2020. At the hearing on

2

May 5, however, Grant requested and was granted a two-week continuance to file his application to allow him to obtain supporting documentation for his claim.

On May 19, 2020, Grant filed his Form I-589 application for asylum, withholding of removal, and protection under the CAT, asserting a single claim. Grant claimed that Kerron was a high-ranking member of the "mafia gang" in Jamaica, and that he had heard rumors in jail that Kerron labeled him a "snitch" because Grant refused Kerron's request that Grant take sole responsibility for the marijuana found during the March 2019 traffic stop. Grant also claimed that his family members in Jamaica had informed him of rumors that his brother had been murdered in May 2019 by the mafia gang because of Grant's refusal. Grant claimed that he would be persecuted and/or tortured as a "snitch" by the mafia gang if he were deported to Jamaica. The IJ set a deadline for submission of all evidence by June 30, 2020, a deadline for responses by July 10, 2020, and a hearing date of July 15, 2020.

On June 30, 2020, well beyond the filing deadline for his I-589 application, Grant raised a second claim for relief from deportation, asserting that he had been persecuted and tortured by the Jamaican police in 2009 and 2016 due to his sexual orientation as a bisexual man. Grant requested a continuance of the scheduled hearing to obtain and submit evidence in support of this new claim. The IJ found that Grant had failed to demonstrate good cause for a continuance of the scheduled hearing but extended the deadline to allow Grant to submit additional evidence until July 8, 2020.

3

On July 15, 2020, the IJ held an evidentiary hearing on the merits of Grant's application for relief, at which Grant's testimony was taken. The IJ subsequently issued a written decision denying all claims for relief.

Regarding Grant's claim for asylum and withholding of removal based upon his fear of future persecution by the mafia gang, the IJ found Grant's testimony to be credible insofar as it related to the fact that his brother had been murdered and that he had a subjective fear of the gang. However, the IJ concluded that Grant had failed to meet his burden of proving an objectively reasonable, well-founded fear of future persecution because the claim was based solely upon Grant's speculative testimony about uncorroborated rumors related to him by others. In the alternative, the IJ found that Grant's purported social group of "Jamaican males who are deemed to be 'snitches' by quasi-governmental criminal organizations" lacked the requisite particularity for asylum relief. Moreover, Grant had failed to establish that his membership in this alleged social group would be one central reason for his feared persecution. The IJ also found that, even if Grant had established his statutory eligibility for asylum relief, the application would be denied as a matter of discretion.

Regarding Grant's newly asserted claim for asylum and withholding of removal based upon his sexual orientation and his prior experiences in Jamaica, the IJ found Grant's testimony vague, incredible, and implausible. In addition, the IJ concluded that Grant had failed to corroborate this claim with witness statements or objective evidence.

Finally, the IJ found that Grant was not entitled to relief under the CAT because he had failed to demonstrate that it was more likely than not that he would be tortured by the

4

mafia gang based upon his alleged designation as a "snitch," again due to the speculative and uncorroborated nature of his claims, or by the police based upon his alleged sexual orientation as a bisexual man, due to his incredible and uncorroborated testimony regarding his sexual orientation and his alleged persecution in Jamaica prior to coming to the United States.

The BIA adopted and affirmed the IJ's decision denying Grant's applications for asylum, withholding of removal, and relief under the CAT. Having determined that Grant was properly removable under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa, the BIA found it unnecessary to address Grant's challenge to the IJ's determination that he was also removable under 8 U.S.C. § 1227(a)(2)(B) based upon his controlled substance offenses. Grant filed a timely petition for review to this court.

We have jurisdiction over final orders of removal under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA adopts an IJ's decision and adds analysis of its own, we review both decisions. *See Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009). We review credibility and factual determinations, including whether Grant suffered past persecution or has a well-founded fear of future persecution on account of a protected ground, for substantial evidence. *See B.C. v. Att'y Gen.*, 12 F.4th 306, 313 (3d Cir. 2021). Under this deferential substantial-evidence standard, "we must uphold the agency's determination unless the evidence would compel any reasonable fact finder to reach a contrary result." *Gonzalez-Posadas v. Att'y Gen.*, 781 F.3d 677, 684 n.5 (3d Cir. 2015). The same standard applies to factual challenges to CAT orders. *See Nasralla v. Barr*,

140 S. Ct. 1683, 1692 (2020). We review legal conclusions de novo. *See B.C.*, 12 F.4th at 313.

## II.

The Attorney General may, in his or her discretion, grant asylum to a petitioner who establishes "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); 8 U.S.C. § 1158(b)(1)(A), (B). To do so, the petitioner may prove past persecution, which creates a rebuttable presumption of future persecution, or a well-founded fear of future persecution, on account of a protected ground. 8 C.F.R. § 1208.13(b). The petitioner's fear of future persecution must be subjectively genuine and objectively reasonable. *See Guo v. Ashcroft*, 386 F.3d 556, 564-65 (3d Cir. 2004).

A petitioner who seeks asylum based upon membership in a particular social group must establish that the group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 178 (3d Cir. 2020) (internal quotation marks omitted). To satisfy the "on account of" or nexus requirement, the applicant must establish that the protected ground "was or will be at least one central reason for his persecution." *Id.* (internal quotation marks omitted).

## A.

Grant's original I-589 application was based upon his claim that he had been designated a "snitch" by Kerron and, as a result, would face persecution by the mafia gang. Grant testified that he heard jailhouse rumors that Kerron had done this because

6

Grant refused to let Kerron off the hook by claiming ownership of the marijuana during the vehicle stop. Grant testified that his family members in Jamaica had also heard rumors that Grant's brother was murdered in May 2019, because of Grant's activities in the United States. At the hearing in July 2020, Grant also claimed, for the first time, that his family informed him that his nephew and aunt had also been recently threatened by anonymous persons.[1]

The IJ found Grant's testimony credible insofar as it related to what his family had told him about his brother's murder in Jamaica and his subjective fear of the mafia gang, but questioned the reliability of Grant's testimony regarding his aunt and nephew because of the belated nature of the claim. In any event, Grant had submitted no corroborating statements from any of his family members in Jamaica regarding his brother's murder, the alleged threats against his other family members, or the specifics of the "rumors" about him. Thus, the claim was based solely on Grant's own speculation that his brother had been killed by the mafia gang. Considering the totality of the evidence submitted, the IJ found that the alleged incidents of violence in Jamaica were more likely attributable to random acts of violence rather than persecution of Grant's family members. Accordingly, the IJ found that the "snitch" claim was wholly speculative, and that Grant had failed to establish an objectively reasonable fear of persecution.

---

[1] Although Grant's "snitch" claim was untimely filed, the IJ found that changed circumstances excused the untimely filing because, although his brother was murdered in May 2019, Grant first learned that his brother's death was rumored to be at the hands of the "mafia gang" in 2020.

7

In the alternative, the IJ found that, even if Grant had demonstrated an objectively well-founded fear of future persecution, Grant's asserted social group of "Jamaican males who are deemed to be 'snitches' by quasi-governmental criminal organizations" was not cognizable because it lacked the requisite particularity. The term "snitch," the IJ found, could encompass a wide range of conduct both in Jamaica and this country, including cooperating with the police, testifying in court, acting as an informant, or, as in Grant's case, not cooperating with the police but merely having been suspected of doing so. In addition, given the speculative nature of the rumors and other claims, Grant had failed to demonstrate a nexus between his alleged status as a perceived "snitch" by the mafia gang and the seemingly random acts of violence that had occurred in Jamaica.

We find no legal or factual error in these rulings. The IJ's finding that Grant had failed to demonstrate a well-founded fear of future persecution is supported by substantial evidence. Moreover, even if Grant's proposed social group were recognizable, which is doubtful, the IJ's finding that he also failed to demonstrate that his membership in the purported social group would be a "central reason" for his persecution was also supported by substantial evidence.

**B.**

We also find no factual or legal error in the agency's denial of Grant's belated claim that he had a well-founded fear of future persecution on account of his sexual orientation as a bisexual man. The IJ found that Grant's testimony regarding his sexual orientation and his alleged past persecution at the hands of the Jamaican police was vague, incredible, implausible, and uncorroborated by any statements or other

8

particularized evidence of his circumstances or experiences. Although Grant claimed to have known his sexual orientation for many years and had been subjected to two incidents of severe mistreatment and torture in Jamaica in 2009 and 2016, he had not mentioned either incident to his legal counsel or at any of his previous four hearings. Because the IJ's credibility and other factual findings are supported by substantial evidence, Grant is not entitled to relief from these rulings.[2]

Grant's claim that the IJ prohibited him from providing corroborating evidence in support of this claim also does not avail him. We review an IJ's decision to deny a continuance for an abuse of discretion. *See Hashmi v. Att'y Gen.*, 531 F.3d 256, 259 (3d Cir. 2008). The "IJ's decision should be reversed as an abuse of discretion only if it is arbitrary, irrational or contrary to law." *Id.* "[W]hether denial of a continuance in an immigration proceeding constitutes an abuse of discretion cannot be decided through the application of bright-line rules; it must be resolved on a case by case basis according to the facts and circumstances of each case." *Id.* at 259-60 (internal quotation marks omitted). For example, this court has held that the agency abuses its discretion if it

---

[2] The IJ also found Grant's sexual-orientation claim to be untimely and unexcused by changed circumstances because Grant claimed to have known his sexual orientation from a young age, to have engaged in multiple relationships with men in Jamaica, and to have been subjected to persecution and torture in 2009 and 2016 – well prior to his coming to the United States and his filing of his application for asylum, withholding of removal, and relief under the CAT. Because we deny Grant's sexual-orientation claim on other grounds, we decline to address the question of whether he raised, and therefore exhausted, this ruling before the BIA and, if so, whether the claim should have been considered timely because the IJ found that changed circumstances excused Grant's failure to timely file his "snitch" claim. *See e.g., Yan Yang v. Barr*, 939 F.3d 57, 66 (2d Cir. 2019).

9

denies an otherwise meritorious request for a continuance based on case-completion deadlines, rather than considering the facts and circumstances underlying the request. *Id.* at 260-62.

Here, the IJ concluded that Grant had failed to demonstrate good cause for a continuance for several reasons, none of which related to case-completion deadlines. Grant first raised his sexual-orientation claim just two weeks before his merits hearing, even though he claims to have known his sexual orientation since he was a young boy, claims to have had several relationships with men while living in Jamaica, and claims to have been tortured by the Jamaican police on two occasions prior to coming to the United States. Also, Grant did not identify what evidence he was seeking or planning to submit—such as an amended affidavit, statements of support from family or others, or other documents from Jamaica or the United States. Nor did he provide any information as to how long it would take him to obtain the evidence. The IJ did, however, extend the time for Grant to submit his corroborating evidence. Although Grant raised this issue in his brief to the BIA, he again did not specify what he believes he could have obtained or how it would have supported his claim. For the same reasons, Grant's due process claim fails for lack of actual prejudice. *See Morgan v. Att'y Gen.*, 432 F.3d 226, 234-35 (3d Cir. 2005).

Accordingly, we hold that the IJ did not abuse her discretion or otherwise err in denying Grant's motion for a continuance.[3]

---

[3] As noted supra, the IJ also found that, even if Grant had established his statutory eligibility for asylum, Grant's application would be denied as a matter of discretion. *See*

**C.**

Unlike the discretionary relief of asylum, statutory withholding of removal is mandatory if the applicant establishes a clear probability that his "life or freedom would be threatened" on account of the statutorily protected ground. 8 U.S.C. § 1231(b)(3)(A). The IJ found that, because Grant failed to prove eligibility for asylum, he had likewise failed to meet the more stringent standard for withholding of removal. *Shardar v. Ashcroft*, 382 F.3d 318, 324 (3d Cir. 2004) ("Having concluded substantial evidence supports the BIA's denial of asylum, we conclude that withholding of removal was also properly denied."). We find no legal or factual error in the agency's denial of Grant's request for statutory withholding of removal.

**D.**

To succeed on his CAT claim, Grant was required to demonstrate "that it is more likely than not that he . . . would be tortured if he is removed to the proposed country of

---

8 U.S.C. § 1252(b)(4)(D). The agency abuses its discretion when its decision is arbitrary, irrational, or contrary to law. *See Sathanthrasa v. Att'y Gen.*, 968 F.3d 285, 292-93 (3d Cir. 2020). Specifically, the IJ found that the positive equities in Grant's case—his family ties and work history in the United States—were outweighed by the serious negative equities in the case. Grant violated United States immigration laws by remaining in this country beyond the term of his nonimmigrant visa. In the four years that he was in the United States, Grant incurred two criminal convictions resulting from his driving ninety-five miles an hour without a valid driver's license and while under the influence of marijuana. As a result, Grant had posed a grave danger to persons and property in this country. Moreover, Grant showed no willingness to accept responsibility for his actions or remorse. Instead, he denied the criminal conduct, despite the evidence against him and his decision to plead guilty, and offered excuses for his other actions. We hold that the IJ did not abuse her discretion in this regard.

removal," "by or at the instigation of or with the consent or acquiescence of a public official." *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017).

Regarding Grant's asserted fear of torture at the hands of the mafia gang, the agency found the claim too speculative to support CAT relief, and substantial evidence supports this determination. Grant claimed no past harm or threats from Kerron while in the United States, including during the time they were together in criminal and immigration detention. And Grant's claims that his brother was murdered, and other family members were threatened, because Kerron had labeled him a "rat" or "snitch" were based upon uncorroborated rumors and questionable testimony.

Regarding his sexual-orientation claim, the IJ found that Grant's testimony about his sexual orientation and his experiences in Jamaica was incredible, implausible, and unsupported by corroborating evidence. The IJ also considered Grant's country-conditions evidence but found that it, at most, confirmed that members of the LGBTQI community had been subjected to harassment, discrimination, and threats, and provided anecdotal stories of more serious harm. There was no information concerning the rate at which the members of this community had been tortured or killed, and no specific information pertaining to Grant. These findings are likewise supported by substantial evidence.[4]

**E.**

---

[4] Because Grant failed to establish that it was more likely than not that he would be tortured in Jamaica because of his designation as a "snitch" or his sexual orientation, the BIA declined to reach the question of whether the Jamaican authorities would acquiesce to his torture. We likewise decline to consider the issue.

12

Finally, we find no merit to Grant's claim that the BIA erred in failing to adjudicate his challenge to the IJ's finding that he is also subject to removal on account of his controlled substance offenses, and that his due process rights were violated as a result.

Grant conceded that he was removable for remaining in the United States longer than permitted, and Grant did not contest this ground of removability to the BIA or this court. "As a general rule, courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach." *INS v. Bagamasbad*, 382 U.S. 24, 25 (1976). Nor has Grant been prejudiced by the BIA's decision not to address the alternative basis for removal. *See Toro-Romero v. Ashcroft*, 382 F.3d 930, 934-35 (9th Cir. 2004) (holding that the petitioner was not deemed removable on the ground that he had been convicted of a crime of moral turpitude although the IJ found him removable on that ground; the BIA declined to reach it and instead affirmed removal on a different ground, which thus became "the sole ground for the final order of removal").

## III.

For the foregoing reasons, we will deny Grant's Petition for Review of the BIA's judgment.