

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ASHOT GRIGORYAN, | No. 06-74835 |
| Petitioner, | Agency No. A097-371-378 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 10, 2010
Pasadena, California

Before: PREGERSON and M. SMITH, Circuit Judges, and HOLLAND, Senior
District Judge.[**]

Petitioner Ashot Grigoryan, a native and citizen of Armenia, appeals the

denial of his applications for asylum, withholding of removal, and protection under

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.
[**]     The Honorable H. Russel Holland, Senior District Judge for the U.S.
District Court for Alaska, Anchorage, sitting by designation.

the Convention Against Torture (CAT).[1]  Because the Immigration Judge's (IJ) and

Board of Immigration Appeals' (BIA) adverse credibility finding based upon

"inconsistencies" and "omissions" is not supported by substantial evidence, we

reverse and remand.

1.     Where the BIA cites *Matter of Burbano*, 20 I. & N. Dec. 872, 874

(BIA 1994), and also provides its own review of the evidence and the law, the

court reviews both the IJ and the BIA's decisions.  *See Joseph v. Holder*, 600 F.3d

1235, 1239-40 (9th Cir. 2010).

The IJ incorrectly states that Grigoryan failed to mention in his declaration

that he was a shareholder at a factory.  While Grigoryan's asylum application does

not mention the government's audits of the factory or the payments the factory was

forced to make, the application does state that "the government began its illegal

activities against our [factory]," that "the government is illegally harassing us and

stepping over the rights of the private sector," and that "Internal Affairs continued

to come after us and an endless chain of court proceeding[s] began."  The fact that

the government was conducting audits, and that those audits resulted in what

---

[1]  Because Grigoryan filed his application for relief prior to May 11, 2005, the new standards of the REAL ID Act of 2005's, Pub. L. No. 109-13, 119 Stat. 231 (2005), governing credibility determinations and judicial review of such determinations do not apply.  *See Sinha v. Holder*, 564 F.3d 1015, 1021 n.3 (9th Cir. 2009).

amounted to fines or extortion on the factory, are both details that help to flesh out Grigoryan's story, and are not inconsistent with it. Their omission is not substantial evidence supporting a finding of adverse credibility. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000) ("[T]he mere omission of details is insufficient to uphold an adverse credibility finding.") (citations omitted).

The IJ also noted that Grigoryan did not mention in his application that, after he left Armenia, police approached his parents and asked about Grigoryan's whereabouts. In the hearing, Grigoryan's attorney pointed out that the supplemental statement mentions that "[o]nce in the United States, through contacts with [his] acquaintances, [Grigoryan] was advised not to return as the situation has only gotten more serious, and that the authorities continue to look for [him]." The IJ, however, responded that he "wouldn't consider [Grigoryan's] parents to be acquaintances." But the fact that Grigoryan neglected to say "acquaintances *and parents*" cannot serve as the basis for an adverse credibility determination. The fact is that Grigoryan mentioned being advised not to return to Armenia because the authorities were looking for him. That he neglected to mention this collateral incident involving relatives cannot support an adverse credibility finding. *See Aguilera-Cota v. INS*, 914 F.2d 1375, 1382 (9th Cir. 1990).

3

The IJ also notes that Grigoryan testified that "even though he was arrested and detained for 15 days [after transporting people to the demonstrations in Yerevan], he suffered no physical punishment as a result of that arrest." But Grigoryan never claimed to have suffered any physical punishment at that time, only stating that he was "interrogated, mistreated and threatened by the government officials and held back from being able to participate in the March 5th elections . . . clearly against our civil rights." The IJ fails to explain how this is inconsistent and instead assumes that Grigoryan must be lying. An adverse credibility finding cannot be based on Grigoryan's consistent statements and the IJ "must offer a specific, cogent reason for any stated disbelief." *Shah v. INS*, 220 F.3d 1062, 1067 (9th Cir. 2000) (citations and internal quotation marks omitted).

The IJ also failed to give a cogent reason for dismissing as inconsistent Grigoryan's testimony that government officials asked him to sign a statement indicating that he was forced to give false information to the crowd. The IJ claims this was present in his application "in the most obtuse manner," but does not go on to explain how this is inconsistent with Grigoryan's statement that he was "violently mistreated and threatened for pressing the public and spreading untrue information in regards to the elections." This does not contribute to the substantial

4

evidence necessary to uphold the IJ's credibility determination. *Soto-Olarte v. Holder*, 555 F.3d 1089, 1091-1092 (9th Cir. 2009).

In addition, the IJ also based his adverse credibility finding on a number of frivolous "inconsistencies" and "omissions" in Grigoryan's testimony and application. These include the number of people present at Grigoryan's speech; the number of people arrested at the same demonstration; the name of his financial partner; and the fact that Grigoryan supported the People's Party of Armenia not only financially and morally, but also by transporting people to demonstrations. None of these minor discrepancies goes to the heart of the persecution claim and thus cannot form the basis of an adverse credibility finding. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 660 (9th Cir. 2003).

"It is well settled that an applicant's testimony is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application." *Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996); *see also Akinmade v. INS*, 196 F.3d 951, 956 (9th Cir. 1999) ("[A] concern that the affidavit is not as complete as might be desired cannot, without more, properly serve as a basis for a finding of lack of credibility." (internal quotation marks omitted)).

2.     The BIA's adverse credibility determination is also not supported by substantial evidence.  In its decision adopting and affirming the IJ's denial of Grigoryan's applications for relief, the BIA focused on what it believed to be inconsistencies in Grigoryan's testimony and omissions in his asylum application.

First, the BIA noted that Grigoryan stated in his application that he had been "violently mistreated" when he was detained after giving a speech in front of the opera house, and then stated at the hearing that his injuries "were not that much." But Grigoryan's testimony was given in response to the IJ's questions about his mistreatment during his detention.  In fact, Grigoryan had just finished testifying that he was hit in the head and in the abdomen.  That is consistent with violent mistreatment.  Whether Grigoryan thought his injuries were severe or not is inconsequential and does not conflict with the account of his mistreatment. Moreover, we have previously held that "where a petitioner initially gives one account of persecution but then revises his story so as to 'lessen the degree of persecution he experienced, rather than to increase it,' the discrepancy generally does not support an adverse credibility finding."  *Stoyanov v. INS*, 172 F.3d 731, 736 (9th Cir. 1999) (quoting *Garrovillas v. INS*, 156 F.3d 1010, 1014 (9th Cir.

6

1998)).  Thus, Grigoryan's testimony that his injuries "were not that much" cannot by itself support an adverse credibility finding.

According to the BIA, "[o]ne of the most flagrant inconsistencies and omissions" is the altercation between Grigoryan and the new stockholder. Conceding that Grigoryan listed the incident on his amended asylum application, the BIA focuses on the alleged inconsistency between Grigoryan's statement on the amended application that he was "nearly rendered unconscious" after being beaten, and his testimony that he was knocked unconscious and later required medical treatment for a brain concussion.  In fact, Grigoryan testified that he "lost consciousness *for awhile*."  (emphasis added).  This is consistent with being "nearly rendered unconscious," and, in any case, serves only as a minor inconsistency that does not go to the heart of the asylum claim.  *See Mendoza Manimbao*, 329 F.3d at 660.  Moreover, the fact that Grigoryan did not mention in his amended application that he required medical treatment is an omission that is not inconsistent with his testimony.  It is simply more detail offered in response to questioning.  Thus, this purported inconsistency cannot support an adverse credibility determination.

The BIA's decision also mentioned other omissions that the IJ noted, including the omission of the dates of various incidents in Grigoryan's asylum application. In Grigoryan's case, there were no discrepancies in dates. Rather, in his testimony, Grigoryan provided details, including dates, for incidents he had already described in his asylum application. These dates were not provided to enhance Grigoryan's claims of persecution, and their omission in his asylum application does not have a bearing on his credibility. *Damaize-Job v. INS*, 787 F.2d 1332, 1337 (9th Cir. 1986) ("minor discrepancies in dates that are attributable to the applicant's language problems or typographical errors and cannot be viewed as attempts by the applicant to enhance his claims of persecution have no bearing on credibility."). The fact that Grigoryan later offered dates for the incidents of persecution cannot serve as substantial evidence in favor of an adverse credibility finding.

The BIA also focused on the alleged car bomb explosion, which Grigoryan mentioned for the first time at the hearing. The BIA cites *Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003), for its holding that a petitioner's testimony was discredited when he "failed to include in either of his two asylum applications *or* his principle [sic] testimony the incident that precipitated his flight from

8

Guatemala." (emphasis added). Grigoryan failed to mention the car explosion in his asylum application and supplement. Yet, the petitioner in *Alvarez-Santos* only raised the incident that precipitated his flight "at the conclusion of his testimony, after taking a break, and, assertedly, because of an itch in his shoulder." 332 F.3d at 1254. In contrast, Grigoryan's behavior cannot be interpreted as a sudden afterthought to his principal testimony. Rather, Grigoryan testified about this incident during regular questioning by his attorney. This testimony is consistent with Grigoryan's statement that he had been "threatened to be tortured and killed by the Internal Affairs." The omission of this detail from the asylum application stands in stark contrast to the petitioner's failure, in *Alvarez-Santos*, to mention that he had been stabbed and fled to the mountains, which the IJ described as "pivotal" in that case. 332 F.3d at 1254. In Grigoryan's case, the IJ mentions this omission in passing, among his list of details omitted in the application but to which Grigoryan later testified. Thus, this omission is not substantial evidence in favor of an adverse credibility finding.

3. Finally, Grigoryan's asylum application was filled out by his cousin, Marianna Manukyan. We have previously stated that "asylum forms filled out by people who are unable to retain counsel should be read charitably, especially when

9

it comes to the absence of a comprehensive and thorough account of all past instances of persecution." *Smolniakova v. Gonzales*, 422 F.3d 1037, 1045 (9th Cir. 2005) (internal quotation marks omitted). There is no indication in the record that Manukyan is trained in immigration or asylum law, or even that she has filled out an asylum application before.

A charitable reading of Grigoryan's asylum application suggests that neither Grigoryan nor Manukyan understood that they might not be providing the level of detail the IJ would require of Grigoryan. Nothing that Grigoryan later testified to contradicted what he wrote in his asylum application or in the supplement to the application. Grigoryan's and Manukyan's lack of sophistication in filling out an asylum application adequately explains the lack of comprehensiveness in accounting for every single instance of persecution in the application. Therefore, the omission of particular details on the application, to which Grigoryan later testified, cannot serve as substantial support for an adverse credibility determination.

4. Because the inconsistencies and omissions noted by both the IJ and the BIA are reconcilable or nonmaterial, substantial evidence does not support the IJ and the BIA's adverse credibility determination. *Gui v. INS*, 280 F.3d 1217,

10

1225 (9th Cir. 2002); *Zhao v. Mukasey*, 540 F.3d 1027, 1029 (9th Cir. 2008). We reverse the adverse credibility finding and remand to the BIA for a redetermination of Grigoryan's eligibility for asylum and entitlement to withholding of removal. *See He v. Ashcroft*, 328 F.3d 593, 603-04 (9th Cir. 2003) (citing *INS v. Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam)). [2]

**PETITION GRANTED; REVERSED and REMANDED.**

---

[2] Because we reverse the BIA and the IJ's adverse credibility determination and remand, we need not reach Grigoryan's arguments that the IJ prejudged his case, speculated that Grigoryan intentionally left out details from his asylum application in order to avoid potential inconsistencies, and decided to deny Grigoryan relief from the outset of the hearing.