# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SILVIA TAPIA CORIA,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 22-970

Agency No.
A092-680-641

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 20, 2023
Phoenix, Arizona

Filed March 19, 2024
Amended August 16, 2024

Before: Sandra S. Ikuta, Bridget S. Bade, and Daniel A.
Bress, Circuit Judges.

Order;
Opinion by Judge Bress

# SUMMARY[*]

## Immigration

The panel denied a petition for rehearing en banc and issued an amended opinion dismissing, for lack of jurisdiction, a petition for review of the Board of Immigration Appeals' denial of petitioner's motions for remand and administrative closure.

In the original opinion, the panel held that this court's "on the merits" exception to the criminal jurisdiction bar at 8 U.S.C. § 1252(a)(2)(C) is clearly irreconcilable with the reasoning and theory of *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), which defined a "final order of removal" to include all IJ or BIA rulings that "merge into final orders of removal," meaning all matters on which the validity of the final order is contingent, and held that judicial review does not extend to factual challenges to the final removal order. Because petitioner's motions to remand and for administrative closure merged with her final order of removal, and it was undisputed that she had a qualifying criminal conviction, the panel held that it lacked jurisdiction to review petitioner's challenge to the Board's factual findings in connection with the denial of relief.

In the amended opinion, the panel added a footnote explaining that the panel's decision did not disturb the result in *Alvarez-Santos v. INS*, 332 F.3d 1245 (9th Cir. 2003), which stands for the proposition that for the criminal alien bar to apply, there must be an agency "determination that the

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

alien is removable" based on a covered conviction. The panel had no occasion in this case to decide whether *Nasrallah* or other intervening law changes this threshold requirement in *Alvarez-Santos*, which therefore remains intact.

## COUNSEL

Christopher J. Stender (argued), Federal Immigration Counselors AZ PC, Phoenix, Arizona; David J. Zimmer and Gerard J. Cedrone, Goodwin Procter LLP, Boston, Massachusetts; Rohiniyurie Tashima, Goodwin Procter LLP, Washington, D.C.; for Petitioner.

Yanal H. Yousef (argued) and Kristen H. Blosser, Trial Attorneys; Anthony P. Nicastro, Assistant Director; Civil Division/ Office of Immigration Litigation; Brian Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Respondent.

## ORDER

The opinion filed on March 19, 2024, and appearing at 96 F.4th 1192, is amended as follows:

- At Slip Op. page 19, line 18 [96 F.4th at 1202], change "genesis" to "precursor."

- At Slip Op. page 23, footnote 4 [96 F.4th at 1204 n.4], remove "*Alvarez-Santos*, 332 F.3d at 1250."

- At Slip Op. page 28, line 16 [96 F.4th at 1206], remove "*Alvarez-Santos*, 332 F.3d at 1250–53."

- At Slip Op. page 31, line 32 [96 F.4th at 1208], add the following footnote:

> We note that our decision today does not disturb the result in *Alvarez-Santos*. *Unuakhaulu* and its progeny forged the "on the merits" exception based on an extension of the reasoning in *Alvarez-Santos*. *See Pechenkov*, 705 F.3d at 450 (Graber, J., concurring) ("In *Unuakhaulu*, we took *Alvarez-Santos* a step further."). But as we have discussed, the key issue on which *Alvarez-Santos* relied was that the IJ did not find that the petitioner was removable due to a conviction covered by § 1252(a)(2)(C). *See* 332 F.3d at 1249. *Alvarez-Santos* stands for the proposition that for the criminal alien bar to apply, there must be an agency "determination that the alien is removable" based on a covered conviction. *Id.* at 1251. We have no occasion in this case to decide whether *Nasrallah* or other intervening law changes this threshold requirement in *Alvarez-Santos*, which therefore remains intact.

With these amendments, the panel unanimously voted to deny the petition for rehearing en banc. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for rehearing en banc, Dkt. No. 38, is DENIED. No further petitions for rehearing will be entertained.

## OPINION

BRESS, Circuit Judge:

Under the so-called "criminal alien bar," 8 U.S.C. § 1252(a)(2)(C), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [covered] criminal offense." Statutorily exempted from this jurisdictional prohibition are constitutional claims or questions of law; those we do review. *See id.* § 1252(a)(2)(D). We have also implied a further exception: notwithstanding a criminal conviction that would otherwise bar judicial review under § 1252(a)(2)(C), we may review a final order of removal provided that the Board of Immigration Appeals (BIA) or Immigration Judge (IJ) denied relief "on the merits," rather than on the basis of the criminal offense that triggered § 1252(a)(2)(C). Under these circumstances, we can review the agency's factual findings. In our circuit, this is sometimes called the "on the merits" exception to § 1252(a)(2)(C).

The petitioner in this case sustained a qualifying conviction under § 1252(a)(2)(C), and she does not advance any constitutional claim or question of law. Although she would meet the "on the merits" exception, thereby enabling our review of the agency's factual determinations, the government argues that a recent Supreme Court decision, *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), abrogates the "on the merits" exception. *Nasrallah* defined the contours of "final order of removal" in § 1252(a)(2)(C), explaining that it includes any denial of relief that "merges with" the final order of removal. *Nasrallah* further made clear that when § 1252(a)(2)(C) applies, "the court of appeals may not

review *factual* challenges to a final order of removal." *Id.* at 1690 (emphasis in original). We agree with the government that our "on the merits" exception is no longer valid because "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority" in *Nasrallah*. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

In this opinion, we lay out the legal framework that *Nasrallah* ordains for determining when the criminal alien bar precludes judicial review of agency factual findings in a petition for review of a final order of removal. Applying that framework to this case, we hold that because the petitioner challenges the denial of relief that merges with the final order of removal, we lack jurisdiction under § 1252(a)(2)(C) to review petitioner's factual challenges—the only type of challenge she raises. We accordingly dismiss the petition for review.

I

The petitioner in this case is Silvia Tapia Coria, a native and citizen of Mexico. She arrived in the United States on January 1, 1982, becoming a lawful permanent resident on December 31, 1990. In 1999, she was convicted of possession for sale of methamphetamine, a controlled substance, in violation of California Health and Safety Code § 11378. She was sentenced to 180 days of imprisonment and three years of probation. Following her sentence, Tapia Coria continued to reside in the United States.

Sixteen years later, in September 2015, and upon return from a trip to Mexico, Tapia Coria sought admission into the United States as a returning lawful permanent resident at the Phoenix, Arizona port of entry. Because she was on a watch list due to her drug conviction, Tapia Coria was referred to

secondary inspection and paroled into the United States on a deferred basis, pending further investigation.

In November 2015, the Department of Homeland Security (DHS) initiated removal proceedings against Tapia Coria. The Notice to Appear charged her as an inadmissible alien subject to removal because she was an alien convicted of a controlled substance offense, 8 U.S.C. § 1182(a)(2)(A)(i)(II), and an alien whom "the consular officer or the Attorney General knows or has reason to believe is or has been an illicit trafficker in any controlled substance," *id.* § 1182(a)(2)(C)(i).

Tapia Coria appeared before an immigration judge (IJ) in February 2016. She denied both charges of inadmissibility but admitted all other factual allegations in the Notice to Appear. On May 24, 2017, Tapia Coria filed an application for cancellation of removal, later moving to terminate the removal proceedings. In March 2021, the IJ sustained both charges of removability and denied relief on all grounds. The IJ thus ordered Tapia Coria removed to Mexico.

Tapia Coria appealed the IJ's decision to the BIA. As relevant to her current petition for review, Tapia Coria requested remand to the IJ on the new theory that she was eligible to become a derivative beneficiary of her husband's pending U visa application. 8 U.S.C. §1101(a)(15)(U). U visas are made available to certain aliens who are victims of criminal activity in the United States and who come forward to report it; certain family members of the applicant are also eligible for derivative U visa status. *See Medina Tovar v. Zuchowski*, 982 F.3d 631, 633–34 (9th Cir. 2020) (en banc); 8 U.S.C. § 1101(a)(15)(U).

Tapia Coria attached to her motion to remand documents showing that her husband had filed a U visa application in March 2018, and that she filed an application to be a derivative beneficiary in August 2021. Because of her inadmissibility charges, Tapia Coria was also required to apply for an inadmissibility waiver, which she submitted in connection with the U visa request. 8 U.S.C. § 1182(h). While her appeal was pending before the BIA, Tapia Coria moved for administrative closure of her removal proceedings, repeating the same arguments about the U visa.

The BIA dismissed Tapia Coria's appeal and denied her motions for remand and administrative closure. The BIA held that Tapia Coria's methamphetamine conviction rendered her removable under 8 U.S.C. § 1182(a)(2)(A)(i)(II). Responding to Tapia Coria's argument that she was now seeking to be a derivative beneficiary of her husband's U visa application, the BIA found it speculative whether Tapia Coria would receive this relief: "The uncertainty concerning when relief will become available based on the recent filing, and the likelihood of success diminished by the need for an inadmissibility waiver, weighs heavily against a further continuance and a further delay of [Tapia Coria's] proceedings." The BIA thus denied Tapia Coria's motion to remand. It denied her motion for administrative closure for the same reasons: "Given the speculative nature as to when [Tapia Coria's] U visa may be adjudicated, and the likelihood of success diminished by the need for an inadmissibility waiver, we are

not persuaded the proceedings should be administratively closed."[1]

Tapia Coria timely petitioned for review of the BIA's denial of her motions for remand and administrative closure. But "[b]efore we reach the merits of [Tapia Coria's] claim[s], we must determine whether we have jurisdiction to review the BIA's denial" of her motions. *Diaz-Covarrubias v. Mukasey*, 551 F.3d 1114, 1116–17 (9th Cir. 2009).

II

Under 8 U.S.C. § 1252(a)(2)(C), "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [covered] criminal offense." This provision is sometimes referred to as the "criminal alien bar." *See, e.g.*, *Kucana v. Holder*, 558 U.S. 233, 246 (2010); *Silva v. Garland*, 993 F.3d 705, 712 n.4 (9th Cir. 2021).

In this case, it is undisputed that Tapia Coria's California conviction for methamphetamine possession for sale triggers § 1252(a)(2)(C). Section 1252(a)(2)(C) applies to "a criminal offense covered in section 1182(a)(2)," and Tapia Coria's methamphetamine conviction is an offense under § 1182(a)(2)(A)(i)(II). *See also United States v. Rodriguez-Gamboa*, 972 F.3d 1148, 1152–54 (9th Cir. 2020) (holding that California's definition of methamphetamine is a categorical match to the federal definition). If Tapia Coria

---

[1] Before the BIA, Tapia Coria made other arguments in support of her motions for remand and administrative closure, and she also sought additional relief, such as cancellation of removal. Tapia Coria does not renew those arguments here. Tapia Coria challenges only the BIA's denial of her motions to remand and for administrative closure based on her pending derivative U visa application. We thus confine our analysis to that issue.

asks us to review a final order of removal, we lack jurisdiction under § 1252(a)(2)(C) unless an exception applies.

We hold that under the criminal alien bar, we lack jurisdiction to consider Tapia Coria's petition for review. Our analysis proceeds in several steps. In Part II.A, we first conclude, using the framework of *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020), that Tapia Coria is seeking review of a "final order of removal," thus implicating § 1252(a)(2)(C). In Part II.B, we examine Tapia Coria's petition under existing circuit precedent and conclude that although Tapia Coria does not raise any constitutional claim or question of law under § 1252(a)(2)(D), we would have jurisdiction to review her factual challenges to the BIA's denial of relief under our circuit's "on the merits" exception to § 1252(a)(2)(C). In Part II.C, however, we conclude that the "on the merits" exception is clearly irreconcilable with the reasoning and theory of *Nasrallah*. Thus, the "on the merits" exception can no longer govern. In Part II.D, we lay out the new, post-*Nasrallah* framework governing the criminal alien bar and recap how that framework applies to this case.

## A

The first question we consider is whether Tapia Coria's challenge to the BIA's denial of her motions to remand and for administrative closure seeks review of a "final order of removal" within the meaning of § 1252(a)(2)(C). We hold that it does. We will have more to say about the Supreme Court's recent decision in *Nasrallah* later, when we address our circuit's "on the merits" exception. But *Nasrallah* is also central in confirming, at the outset, that Tapia Coria is challenging a "final order of removal," thus implicating § 1252(a)(2)(C).

1

*Nasrallah* considered whether the criminal alien bar applies to judicial review of the denial of relief under the Convention Against Torture (CAT). *Nasrallah* held that it did not because a ruling on CAT protection is not part of the "final order of removal" under § 1252(a)(2)(C). 140 S. Ct. at 1689–92. This means that courts of appeal can review factual findings underlying the denial of CAT relief. *Id.* at 1688; *see also, e.g.*, *Park v. Garland*, 72 F.4th 965, 973 (9th Cir. 2023). In so holding, the Supreme Court was required to explain what qualifies, in the first place, as a "final order of removal" within the meaning of § 1252(a)(2)(C).

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) gives courts of appeal the power to review "final order[s] of removal." *Nasrallah*, 140 S. Ct. at 1689–90 (quoting 8 U.S.C. § 1252(a)(1)). In the "deportation context," the phrase has an obvious meaning: "a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" *Id.* at 1690 (quoting § 1101(a)(47)(A)). But the Supreme Court in *Nasrallah* recognized that an order need not be "*the same* as final orders of removal" to be reviewable by courts of appeal (absent a jurisdiction-stripping provision). *Id.* at 1691 (emphasis in original). The Act "also states that judicial review 'of all questions of law and fact arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.'" *Id.* at 1690 (alteration omitted) (quoting 8 U.S.C. § 1252(b)(9)). The Act consolidates judicial review of "a noncitizen's various challenges arising from the removal proceeding" in the courts of appeals, thereby streamlining the judicial review

process.  *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 313 & n.37 (2001)).

According to *Nasrallah*, the phrase "final order of removal" in 8 U.S.C. § 1252(a)(2)(C) encompasses more than just an order finding that an alien is removable.  *See id.* at 1691.  Instead, a "final order of removal" includes all rulings of an IJ or the BIA that "merge into final orders of removal."  *Id.*  *Nasrallah* gave as an example an IJ's evidentiary rulings.  *Id.*  *Nasrallah* explained that a decision merges into the final order of removal when it "affect[s] the validity of the final order of removal" or "disturb[s] the final order of removal."  *Id.*  In other words, "review of a final order of removal 'includes all matters on which the validity of the final order is contingent.'"  *Id.* (quoting *INS v. Chadha*, 462 U.S. 919, 938 (1983)).

With "final order of removal" properly defined, *Nasrallah* held that this term did not encompass a CAT order.  Such an order "does not disturb the final order of removal" because the alien remains removable at any time regardless of the ruling on the application for CAT protection.  *Id.*  The reason is that "[a]n order granting CAT relief means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country."  *Id.*  Even while an order granting CAT relief is in place, an alien can still "be removed at any time to another country where he or she is not likely to be tortured."  *Id.* (quoting 8 C.F.R. §§ 1208.17(b)(2), 1208.16(f)).  Given the alien's continued ability to "be removed at any time," a denial of CAT relief does not merge into the final order of removal.  *Id.* (quotations omitted).  That is so even though "[a] CAT order may be reviewed together with the final order of removal."  *Id.* at 1692.

With the benefit of *Nasrallah*'s guidance, we hold that in challenging the denials of her motions for remand and administrative closure, Tapia Coria asks us to review agency decisions that merge with the final order of removal. Each motion, if granted, would "affect the validity of the final order of removal" or "disturb the final order of removal." *Id.* at 1691.

Tapia Coria sought a remand to the IJ and administrative closure of her removal proceedings to allow her to pursue U visa relief. And U visa relief, if awarded, would preclude Tapia Coria's removal. *See, e.g.*, *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 761 (9th Cir. 2015) ("Had Cisneros been granted a U-visa subsequent to the issuance of the removal order, the removal order would have been canceled."); 8 C.F.R. § 214.14(c)(5)(i) ("For a petitioner who is subject to an order of exclusion, deportation, or removal issued by the Secretary, the order will be deemed canceled by operation of law as of the date of USCIS' approval of [the U visa application].").

From this we conclude that resolution of Tapia Coria's motion for remand or motion for administrative closure "merge[s] into the final order of removal" because the motions, if granted, would "affect the validity of the final order of removal." *Nasrallah*, 140 S. Ct. at 1691. The entire point of Tapia Coria's motions before the BIA was to forestall the final order of removal and prevent it from taking effect while she pursued U visa relief. By statute, an order of removal "become[s] final upon" a decision of the BIA affirming that order or the expiration of the period for seeking BIA review. 8 U.S.C. § 1101(a)(47)(B). And we have held that "an order of removal cannot become final for any purpose when it depends on the resolution of further issues by the IJ on remand." *Abdisalan v. Holder*, 774 F.3d

517, 523 (9th Cir. 2014) (en banc), *as amended* (Jan. 6, 2015).

In this case, the grant of administrative closure would eliminate the immediate possibility of removal because the agency would "temporarily remove [the] case from [the] Immigration Judge's active calendar" and "close removal proceedings." *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692, 696 (B.I.A. 2012); *see also Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 889 (9th Cir. 2018); *Diaz-Covarrubias*, 551 F.3d at 1116. Importantly, "administrative closure does not result in a final order." *Gonzalez-Caraveo*, 882 F.3d at 889.

Tapia Coria's related motion to remand would have a similar result. This motion is akin to a motion to reopen and is evaluated by the same standards, except that, unlike a motion to reopen, it is made when the matter is still pending before the BIA. *See Alcarez-Rodriguez v. Garland*, 89 F.4th 754, 759 (9th Cir. 2023); *Rodriguez v. INS*, 841 F.2d 865, 867 (9th Cir. 1987). Tapia Coria's motion to remand to the IJ would likewise not have the BIA affirm the removal order; it would send the matter back to the IJ for more proceedings. Here, that would effectively involve the IJ waiting for the U visa process to run its course. Once again, the final order of removal would be held pending additional developments. This would "disturb the final order of removal," *Nasrallah*, 140 S. Ct. at 1691, preventing an alien's removal.

Our conclusion that Tapia Coria's motion to remand merges with her final order of removal finds further support in longstanding Ninth Circuit precedent holding that "where Congress explicitly withdraws our jurisdiction to review a final order of deportation, our authority to review motions to reconsider or to reopen deportation proceedings is thereby likewise withdrawn." *Sarmadi v. INS*, 121 F.3d 1319, 1322

(9th Cir. 1997); *see also, e.g.*, *Singh v. Barr*, 982 F.3d 778, 782 (9th Cir. 2020); *Ghahremani v. Gonzales*, 498 F.3d 993, 998 n.5 (9th Cir. 2007); *Briseno v. INS*, 192 F.3d 1320, 1323 (9th Cir. 1999); *Beltran-Leon v. INS*, 134 F.3d 1379, 1380 (9th Cir. 1998).

*Sarmadi* involved a predecessor provision which stated that "any final order of deportation against an alien who is deportable by reason of having committed [a covered offense] . . . shall not be subject to review by any court." *Sarmadi*, 121 F.3d at 1321 n.1 (quoting § 440 of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), as amended by § 306(d) of IIRIRA). This provision was repealed in September 1996, at the same time that § 1252(a)(2)(C) was enacted. *See* Omnibus Consolidated Appropriations Act, 1997, Pub. L. 104–208, 110 Stat. 3009 (1996).

The petitioner in *Sarmadi* sought judicial review of the BIA's denial of his motion to reopen his removal proceedings. 121 F.3d at 1321. But we held that Congress's "withdrawal of judicial review over final orders of deportation also withdraws jurisdiction from motions to reconsider or to reopen deportation proceedings for those aliens deportable for having committed a crime enumerated in the statute." *Id.*; *see also id.* at 1322 ("Where an alien has been ordered deported for crimes covered in § 440(a), we lack jurisdiction to review the BIA's denial of a motion to reopen or to reconsider its decision.").

In Tapia Coria's case, we have applied this same basic logic from *Sarmadi* in concluding that a motion to remand, which is analogous to a motion to reopen, merges with the final order of removal for purposes of § 1252(a)(2)(C). Any

different conclusion would be, in effect, contrary to *Sarmadi* and its progeny.

2

We recognize that in *Williams v. Garland*, 59 F.4th 620 (4th Cir. 2023), a divided Fourth Circuit recently held that the BIA's denial of reconsideration or reopening of a prior order of removal does not fall within § 1252(a)(2)(C)'s jurisdictional bar, when the petitioner seeks "judicial review of collateral facts far removed from the underlying 'final order of removal.'" *Id.* at 627. To reach this conclusion, the Fourth Circuit reasoned that although Congress gave courts of appeal jurisdiction to review the denials of motions to reopen or reconsider a prior order of removal, "it said nothing about extending § 1252(a)(2)(C) to our review of reopening and reconsideration motions, even though it could have easily" done so. *Id.* at 629. From this the Fourth Circuit inferred that courts "retain jurisdiction to review all aspects of the BIA's decisions [on motions to reopen and reconsider prior orders of removal] except where our review clearly conflicts with § 1252(a)(2)(C)'s core statutory aims." *Id.* (internal quotation marks omitted). The latter "conflict" would arise, the Fourth Circuit believed, only when the BIA denies reopening based on "the *substance* of a removal order." *Id.* at 631 (emphasis in original). In those circumstances, courts could not review the BIA's factual findings underlying a motion to reopen or reconsider; they may do so only when the factual findings are "collateral" to the underlying order finding a petitioner removable. *Id.* at 629.

We respectfully disagree with the Fourth Circuit's analysis in *Williams*, finding the *Williams* dissent more persuasive. *See id.* at 644–50 (Rushing, J., dissenting). The

Fourth Circuit's reasoning that § 1252(a)(2)(C) does not explicitly extend to review of motions to reopen or reconsider orders of removal fails to account for *Nasrallah*'s direction that § 1252(a)(2)(C) covers not just final orders of removal, but also orders that "merge into final orders of removal"—that is, decisions that "affect the validity of the final order of removal" or "disturb[] the final order of removal," or those "on which the validity of the final order is contingent." *Nasrallah*, 140 S. Ct. at 1691.

As the *Williams* dissent explained, motions to reopen or reconsider removal orders meet this test because "the very purpose of a motion to reopen or reconsider is to invalidate a prior removal order." 59 F.4th at 649 (Rushing, J., dissenting). Nor do we see how the Fourth Circuit's holding is consistent with our broader reasoning in *Sarmadi* that "where Congress explicitly withdraws our jurisdiction to review a final order of deportation, our authority to review motions to reconsider or to reopen deportation proceedings is thereby likewise withdrawn." 121 F.3d at 1322; *see also Williams*, 59 F.4th at 647 (Rushing, J., dissenting) (citing *Sarmadi* and authorities from other circuits and explaining that "[e]very other circuit to consider this question has applied subparagraph (C) to petitions for review of Board decisions denying reconsideration or reopening"); *Durant v. INS*, 393 F.3d 113, 114 (2d Cir. 2004) (Sotomayor, J.) ("We further hold that when an alien has been ordered removed because of a conviction for one of the offenses specified in § 1252(a)(2)(C), the jurisdictional bar imposed by this

section also applies to an order denying a motion to reopen removal proceedings."), *as amended* (Feb. 1, 2005).[2]

In sum, at least where the further proceedings, if successful, would result in the undoing of the removal order, which is the case here for the contemplated U visa relief, *see Cisneros-Rodriguez*, 813 F.3d at 761; 8 C.F.R. § 214.14(c)(5)(i), Tapia Coria's motions for administrative closure and for remand would disturb the final order of removal. The denial of those motions therefore merged into the final order of removal and are considered part of the final order of removal for purposes of judicial review. *See Nasrallah*, 140 S. Ct. at 1691. And that means they are subject to the criminal alien bar in 8 U.S.C. § 1252(a)(2)(C).[3]

---

[2] *Williams* is also factually distinguishable. In *Williams*, the relevant factual finding in the BIA's decision had nothing to do with the petitioner's underlying conviction, but instead concerned whether the petitioner's immigration attorney had offered her services pro bono, which affected whether petitioner was diligent in seeking to reopen his immigration proceedings. 59 F.4th at 627. If the petitioner in *Williams* could get past this factual issue and the BIA granted the motion to reopen, it was clear that he had a winning argument on the law, because under intervening Supreme Court precedent he could no longer be classified as an aggravated felon. *Id.* at 629. Indeed, "the government d[id] not even dispute that Williams would succeed on it." *Id.* No analogous circumstances are present here.

[3] Similarly, we have recognized that the denial of asylum and withholding of removal fall within the final order of removal and are subject to § 1252(a)(2)(C) "unless an exception applies." *Pechenkov*, 705 F.3d at 448.

## B

The next question is whether, under pre-*Nasrallah* circuit precedent, we have jurisdiction over Tapia Coria's petition because it meets an exception to § 1252(a)(2)(C).

## 1

Under existing circuit precedent, "§ 1252(a)(2)(C)'s jurisdictional bar is subject to two exceptions." *Pechenkov v. Holder*, 705 F.3d 444, 448 (9th Cir. 2012).  The first is found in the next subsection of the statute.  Section 1252(a)(2)(C) strips jurisdiction "except as provided in subparagraph (D)," which grants us jurisdiction to review "constitutional claims or question of law."  8 U.S.C. § 1252(a)(2)(D).

But, as confirmed at oral argument, Tapia Coria advances no colorable constitutional claim or question of law.  Tapia Coria's argument here is that the BIA mistakenly concluded that her prospects of securing a derivative U visa were speculative.  She argues, for example, that evidence in the record and statistics available on a website indicate that her U visa application would be processed in the near future, that the "favorable equities in her case outweigh her one blemish," that she has strong family ties in the United States, and that she otherwise met the factors in *Matter of Avetisyan*, 25 I. & N. Dec. at 696, all making it likely that USCIS would grant the visa as a matter of discretion.  This presents a factual challenge to the BIA's ruling.  Section 1252(a)(2)(D) thus does not restore our jurisdiction here.

But in the absence of intervening higher authority, this would not be fatal to our review because Tapia Coria's petition would fall within the second exception to § 1252(a)(2)(C)—our circuit's "on the merits" exception.

Under that exception, we have jurisdiction notwithstanding the criminal alien bar when "an IJ denies relief *on the merits*, for failure to demonstrate the requisite factual grounds for relief, rather than in reliance on the conviction." *Pechenkov*, 705 F.3d at 448 (emphasis in original). Thus, for example, when an IJ denied statutory withholding of removal on the ground that the petitioner was ineligible for that relief because he had been convicted of a "particularly serious crime," 8 U.S.C. § 1231(b)(3)(B)(ii), we held that we lacked jurisdiction under the criminal alien bar. *Pechenkov*, 705 F.3d at 449. But if the IJ had denied this relief for reasons other than "the crime underlying [petitioner's] removability"—such as a lack of likely persecution on account of a protected ground in the country of removal—then we *would* have had jurisdiction to review the IJ's factual findings, which would be considered findings "on the merits." *Id.* at 448–49.

The precursor of our "on the merits" exception appears to be *Alvarez-Santos v. INS*, 332 F.3d 1245 (9th Cir. 2003). In that case, the government charged the petitioner with removability both for entering the United States without permission and based on a criminal conviction for domestic violence. *Id.* at 1248. The IJ sustained the former charge but expressly rejected the theory that petitioner was removable due to a covered criminal offense. *Id.* at 1249. The BIA later found that the petitioner was not entitled to voluntary departure because he had admitted the essential elements of spousal abuse. *Id.* When the petitioner sought review of the agency's denial of asylum and withholding of removal, the government argued that § 1252(a)(2)(C) prevented our jurisdiction "of an otherwise reviewable removal order where the record establishes that the individual could have been *but was not* ordered removed for

having committed a covered criminal offense." *Id.* at 1250 (emphasis in original).

We disagreed. Considering § 1252(a)(2)(C)—which again states that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a [covered] criminal offense"—we thought the statutory language unclear. *Id.* "On the one hand, 'removable by reason of having committed a criminal offense' could refer back to the 'reason' for the 'final order of removal' under review." *Id.* But on the other hand, "the 'removable' phrase could refer to circumstances that exist but were *not* the basis for the 'final order of removal.'" *Id.* The petitioner in *Alvarez-Santos* was effectively outside either of these potential definitions of § 1252(a)(2)(C) because he had never been found removable by reason of a covered conviction (indeed, as we have noted, the IJ found he was *not* removable due to a criminal conviction). *See Penchenkov*, 705 F.3d at 450 (Graber, J., concurring) (making this same point about *Alvarez-Santos*). Nevertheless, relying on a presumption of judicial review, the principle of construing immigration statutes in favor of aliens, and a reading of other statutory provisions, *Alvarez-Santos* concluded that § 1252(a)(2)(C) "precludes judicial review only when an alien is actually determined to be removable *and* ordered removed on the basis of a covered criminal act." 332 F.3d at 1253 (emphasis added).

Two years later, in *Unuakhaulu v. Gonzales*, 416 F.3d 931 (9th Cir. 2005), we treated *Alvarez-Santos* as having created an exception to § 1252(a)(2)(C) when an alien is "*removable*" based on a conviction yet "*ordered removed*" for other reasons. 416 F.3d at 936–37 (emphasis in original). We concluded that the phrase "removable by reason of

having committed a criminal offense" in § 1252(a)(2)(C) does not simply mean that the alien "*was removable* on the basis of the covered criminal act." *Id.* at 936–37 (emphasis in original). Instead, it requires that a person be "*ordered removed* for having committed a covered criminal offense." *Id.* at 936 (quoting *Alvarez-Santos*, 332 F.3d at 1253) (emphasis in original).

In *Unuakhaulu*, the IJ found the petitioner removable for two reasons, one of which was a criminal conviction for which § 1252(a)(2)(C) applies. *Id.* at 933, 936–37. But the IJ found that this conviction did not disqualify the petitioner from pursuing statutory withholding of removal because it did not rise to the level of a "particularly serious crime." *Id.* at 933–34 (citing 8 U.S.C. § 1231(b)(3)(B)). The IJ instead denied withholding of removal and CAT relief "on the merits" based on the unlikelihood that petitioner would face persecution in Nigeria. *Id.* at 934, 936–37. And "[a]lthough the IJ could have ordered Unuakhaulu removed based on his aggravated felony conviction, she did not explicitly do so." *Id.* at 937. Because the IJ in *Unuakhaulu* "neither specified the basis upon which Unuakhaulu was removed nor stated that Unuakhaulu was ordered removed based on the charges," and because the IJ denied withholding of removal and CAT relief "on the merits," we concluded that § 1252(a)(2)(C) did not apply. *Id.* We thus proceeded to review the factual findings underlying the denial of withholding of removal and CAT relief. *See id.* at 937–39.

Judges on this court have criticized our "on the merits" exception. Our colleague Judge Graber has written that "*Unuakhaulu* and its progeny misread § 1252(a)(2)(C)'s 'by reason of' phrase as applying to the *order of removal*, limiting the jurisdictional bar to cases in which the relevant conviction is the final reason for that order." *Pechenkov*, 705

F.3d at 451 (Graber, J., concurring) (emphasis in original). In Judge Graber's view, "the only relevant question is whether an IJ has made a finding of *removability* because of a relevant conviction." *Id.* (emphasis in original). Judge Graber noted that "[a]t least four of our sister circuits have adopted this textually based view of § 1252(a)(2)(C)'s jurisdiction-stripping provision," whereas the "on-the-merits" exception "appears limited to the Ninth Circuit." *Id.* at 450. Judge Graber thus "urge[d] the court to consider revisiting, in an appropriate case, our mistaken reading of § 1252(a)(2)(C)." *Id.* at 452; *see also Oseida v. Garland*, 2021 WL 5742717, at *1 (9th Cir. Dec. 2, 2021) (Miller, J., concurring in part and dissenting in part) (describing the "on the merits" exception as "inconsistent" with § 1252(a)(2)(C)); *Alphonsus v. Holder*, 705 F.3d 1031, 1050 (9th Cir. 2013) (Graber, J., concurring in part and dissenting in part) ("Our court has read an additional exception into the statute's otherwise unequivocal text, under which we review such orders if the BIA did not rest its decision on the fact of the aggravated felony but instead denied relief from removal on the merits. That interpretation of § 1252(a)(2)(C) ignores the statute's text and conflicts with the views of at least four of our sister circuits."), *abrogation on other grounds recognized by Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018).

Relying on Judge Graber's criticisms, at least two other circuits have explicitly rejected our "on the merits" exception. *See Ortiz-Franco v. Holder*, 782 F.3d 81, 90 (2d Cir. 2015), *abrogated on other grounds by Nasrallah*, 140 S. Ct. 1683; *Ventura-Reyes v. Lynch*, 797 F.3d 348, 357–58 (6th Cir. 2015), *abrogated on other grounds by Nasrallah*,

140 S. Ct. 1683.  We are not aware of any other circuit that has adopted our "on the merits" exception.[4]

As a three-judge panel, we are not free to depart from the "on the merits exception" based on the criticisms that have been levied against it or because it is an apparent outlier exception among the circuits.  Prior to *Nasrallah*—the import of which we take up below—we have thus continued to apply the "on the merits" exception to review factual challenges to final orders of removal when the petitioner would otherwise fall under the criminal alien bar, so long as the IJ or BIA did not explicitly deny relief based on the relevant conviction.  *See, e.g.*, *Agonafer v. Sessions*, 859 F.3d 1198, 1202–03 (9th Cir. 2017); *Garcia v. Lynch*, 798

---

[4] As we noted above, the Fourth Circuit in *Williams* recently held that even though the BIA's denial of reconsideration or reopening of a prior removal order does not implicate § 1252(a)(2)(C), courts in this situation may still only review factual issues "collateral" to the underlying removal order.  59 F.4th at 627.  Although it is not clear under *Williams* how "collateral" to the removal order these facts must be, *see id.* (referencing "collateral facts *far removed from*" the underlying removal order) (emphasis added), it may be that in practice, and at least in the context of motions to reopen or reconsider, the Fourth Circuit would review similar types of facts for which our "on the merits" exception would permit review.  But the Fourth Circuit's approach is not the same as our "on the merits" exception.  In *Williams*, the Fourth Circuit treated motions to reopen and reconsider as outside of § 1252(a)(2)(C), but then created a limit on judicial review to prevent courts from entertaining the "*same*" objection to the underlying removability finding "dressed as a motion to reconsider."  *Id.* at 628 (emphasis in original).  Our "on the merits" exception is analytically distinct.  We treat motions to reopen and other similar orders as falling under § 1252(a)(2)(C) and part of the final order of removal, but we allow an exception for "merits" rulings based on a reading of the statutory text and principles of statutory construction.  *See Unuakhaulu*, 416 F.3d at 936–37.  We do not view the Fourth Circuit as having adopted our "on the merits" exception.

F.3d 876, 880–81 (9th Cir. 2015); *Bromfield v. Mukasey*, 543 F.3d 1071, 1075–76 (9th Cir. 2008).

This exception allows us to review denials of CAT relief when the criminal alien bar would otherwise apply. As we have reasoned, "when an IJ does not rely on an alien's conviction in denying CAT relief and instead denies relief on the merits," § 1252(a)(2)(C) does not divest us of jurisdiction. *Morales v. Gonzales*, 478 F.3d 972, 980 (9th Cir. 2007), *abrogated on other grounds by Anaya-Ortiz v. Holder*, 594 F.3d 673, 677–78 (9th Cir. 2010); *see also, e.g.*, *Lemus-Galvan v. Mukasey*, 518 F.3d 1081, 1084 (9th Cir. 2008), *overruled on other grounds by Maldonado v. Lynch*, 786 F.3d 1155 (9th Cir. 2015) (explaining that "because the determination of the likelihood of torture is a decision on the merits, we have jurisdiction over petitions seeking review of such decisions").

Importantly, the Supreme Court in *Nasrallah* affirmed the *result* of our CAT cases applying the "on the merits" exception, but *not* our reasoning. In the face of § 1252(a)(2)(C), our case law allowing review of IJ factual determinations when denying CAT relief presupposed that the denial of CAT relief was part of the final order of removal and within § 1252(a)(2)(C). But we treated these factual findings as reviewable when the denials were "on the merits" as opposed to on the basis of the criminal conviction that would otherwise preclude jurisdiction. *See, e.g.*, *Morales*, 478 F.3d at 980–81. The Supreme Court in *Nasrallah* instead held that the denial of CAT relief was not part of the final order of removal *at all*, so that § 1252(a)(2)(C) simply did not apply. *Nasrallah*, 140 S. Ct. at 1691–92. Thus, after *Nasrallah*, we still have jurisdiction to review factual findings underlying the denial of CAT

relief, but for the different reason that CAT orders are neither part of the final order of removal nor merge into it.

We will have more to say below in Part II.C about the interaction between *Nasrallah* and our "on the merits" exception.

2

The government briefly argues that even if the "on the merits" exception remains good law after *Nasrallah*, that exception was still not met here. If true, that would obviate our need to consider whether *Nasrallah* abrogates the "on the merits" exception. But assuming for present purposes that our "on the merits" exception remains valid, it would apply here to restore our jurisdiction.

In denying Tapia Coria's motion to remand and motion for administrative closure, the BIA found that it was speculative whether and when Tapia Coria would receive a derivative U visa. In the course of this analysis, the BIA referenced the fact that Tapia Coria's "likelihood of success" in obtaining a U visa was "diminished by the need for an admissibility waiver." Although the BIA did not at this point explicitly mention Tapia Coria's methamphetamine conviction, that conviction was the reason Tapia Coria needed a U visa admissibility waiver. From this evident reference to Tapia Coria's conviction, the government argues that the BIA did not deny relief "on the merits," and instead based on the conviction that triggers § 1252(a)(2)(C).

That is not correct. We have stated that § 1252(a)(2)(C) "bars review only of those orders that are actually '*predicated on* commission or admission of a crime.'" *Garcia*, 798 F.3d at 880 (emphasis altered) (quoting

*Unuakhaulu*, 416 F.3d at 936).   That is, § 1252(a)(2)(C) applies only when relief is denied "*on the basis of* the qualifying conviction." *Id.* (emphasis added).  We have thus concluded that the "on the merits" exception does not apply when the IJ "did not address the merits" of the petitioner's request for relief but instead found him "statutorily *ineligible* for that relief" based on his conviction. *Pechenkov*, 705 F.3d at 449 (emphasis added).

Here, the BIA denied Tapia Coria's motion to remand and motion for administrative closure "on the merits" of those requests, and at best referenced her conviction as one factor in that overall determination.  Even then, the BIA's reference to her conviction did not pertain to the validity of that conviction or the facts and legal elements underlying it.  Instead, the conviction was relevant to the different "merits" question of whether Tapia Coria's derivative U visa application was likely to be granted.   We have never suggested that the criminal alien bar would apply in this circumstance, when the BIA's reason for denying relief involved only a passing reference to the conviction.  Instead, we have stated that under the "on the merits" exception, we "retain jurisdiction to review the BIA's denial of [relief] *to the extent* the BIA rested its decision on a ground other than [the petitioner's] conviction."   *Flores v. Barr*, 930 F.3d 1082, 1087 (9th Cir. 2019) (per curiam) (emphasis added).

*Flores* is instructive in this regard.  There, the IJ denied discretionary relief from removal under former § 212(c) of the Immigration and Nationality Act after balancing the petitioner's positive factors against his negative ones, including a conviction that otherwise triggered the criminal alien bar.  *Id.* at 1084–85.  In reviewing the BIA's denial of the petitioner's motion to reopen, we held that we had jurisdiction under the "on the merits" exception insofar as

the BIA denied relief on grounds other than the criminal conviction. *Id.* at 1087. Thus, even assuming that we are barred from reviewing the portion of the BIA's denial of Tapia Coria's motions to remand and for administrative closure that references Tapia Coria's conviction—which we doubt—there would be no basis to bar our review entirely.

We thus conclude that if the "on the merits" exception remains good law, Tapia Coria would fall within it. We therefore must confront whether our circuit's "on the merits" exception is clearly irreconcilable with *Nasrallah*.

C

*Nasrallah* of course did not directly address the "on the merits" exception. And the Supreme Court in *Nasrallah* described the issue before it as "the narrow" one of whether an alien subject to § 1252(a)(2)(C) may obtain review of factual challenges to a CAT order. 140 S. Ct. at 1688. But in assessing when a three-judge panel may (indeed, must) recognize that intervening higher authority has abrogated circuit precedent, "the issues decided by the higher court need not be identical in order to be controlling." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Instead, "where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Id.* at 893.

Consistent with this directive from *Miller v. Gammie*, three-judge panels from this court have on various occasions concluded that the reasoning or theory of intervening Supreme Court precedent abrogates Ninth Circuit authority. *See, e.g.*, *SEIU Loc. 121RN v. Los Robles Reg'l Med. Ctr.*,

976 F.3d 849, 854–55 (9th Cir. 2020); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105–06 (9th Cir. 2019); *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1111–12 (9th Cir. 2019); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 980–81 (9th Cir. 2013); *Cardenas-Delgado v. Holder*, 720 F.3d 1111, 1119–21 (9th Cir. 2013).

In this case, we conclude that our "on the merits" exception to 8 U.S.C. § 1252(a)(2)(C) is clearly irreconcilable with the reasoning and theory of *Nasrallah*. The "on the merits" exception allows judicial review of certain factual challenges to orders that we have treated as within the ambit of § 1252(a)(2)(C)'s "final order of removal," based on an interpretation of the phrase "removable by reason of having committed a criminal offense" in § 1252(a)(2)(C). *See Unuakhaulu*, 416 F.3d at 936–37; *see also Pechenkov*, 705 F.3d at 451 (Graber, J., concurring).

*Nasrallah*'s reasoning and theory direct a completely different approach to § 1252(a)(2)(C). *Nasrallah* instructs courts to determine *whether* an order is part of the "final order of removal," which includes orders that "merge into the final order of removal." *Nasrallah*, 140 S. Ct. at 1691. If the agency's denial of relief is *not* such an order—such as an order denying CAT relief—an alien can obtain judicial review of factual challenges. *Id.* at 1691–92. But if an order *does* count as a "final order of removal" under § 1252(a)(2)(C), *Nasrallah* is crystal clear: "the court of appeals may not review *factual* challenges to a final order of removal." *Id.* at 1690 (emphasis in original).

The Supreme Court reiterated this point throughout *Nasrallah*. Under *Nasrallah*, if an alien has "committed any crime specified in 8 U.S.C. § 1252(a)(2)(C), federal law

limits the scope of judicial review[:] Those noncitizens may obtain judicial review of constitutional and legal challenges to the final order of removal, but not of factual challenges to the final order of removal." *Id.* at 1687–88. And again: "When a noncitizen is removable because he committed a crime specified in § 1252(a)(2)(C), immigration law bars judicial review of the noncitizen's factual challenges to his final order of removal." *Id.* at 1689. As the Supreme Court concluded, "[t]he relevant statutory text precludes judicial review of factual challenges to final orders of removal." *Id.* at 1691; *see also id.* at 1694 (same). The Supreme Court's categorical interpretation of § 1252(a)(2)(C)—as disallowing review of factual challenges to final orders of removal—is clearly irreconcilable with our determination that we may review certain factual challenges to denials of relief that are considered part of the final order of removal.

*Nasrallah*'s actual holding was also dependent on its view that "the court of appeals may not review *factual* challenges to a final order of removal." *Id.* at 1690 (emphasis in original). The petitioner in *Nasrallah* was seeking review of a factual finding made in denying him CAT relief. *Id.* at 1688–89. If review of such a factual determination was already permitted under § 1252(a)(2)(C), the Court would not have needed to decide whether a CAT order was part of the final order of removal. It was only because § 1252(a)(2)(C) "preclude[s] judicial review of the noncitizen's factual challenges to a final order of removal" that the Supreme Court had to determine whether a CAT order was, at the outset, part of the final order of removal or "distinct" from it. *Id.* at 1694. Indeed, the denial of CAT relief in *Nasrallah* was itself made "on the merits" and not based on the conviction that would have provided the basis for removability. *See id.* at 1688–89.

We address a potential counterargument arising from *Nasrallah* that appears to have influenced the Fourth Circuit's decision in *Williams*. *See Williams*, 59 F.4th at 628–29. After laying out the appropriate approach to decide whether an order denying relief forms part of the "final order of removal," *Nasrallah* addressed several responses from the government, including one about congressional intent: "Why would Congress bar review of factual challenges to a removal order, but allow factual challenges to a CAT order?" *Nasrallah*, 140 S. Ct. at 1693. *Nasrallah*'s first answer was that "we must adhere to the statutory text, which differentiates between the two kinds of orders for those purposes." *Id.*

But the Court went on to explain that "Congress had good reason to distinguish the two." *Id.* For final orders of removal, "[t]he relevant facts will usually just be the existence of the noncitizen's prior criminal convictions," so that "[b]y barring review of factual challenges to final orders of removal, Congress prevented further relitigation of the underlying factual bases for those criminal convictions." *Id.* But CAT orders were different, *Nasrallah* explained, because "the issues related to a CAT order will not typically have been litigated prior to the alien's removal proceedings." *Id.* Those factual issues included "the noncitizen's past experiences in the designated country of removal" and "the political or other current conditions in that country." *Id.* In the Supreme Court's view, "[b]ecause the factual components of CAT orders will not previously have been litigated in court and because those factual issues may be critical to determining whether the noncitizen is likely to be tortured if returned, it makes some sense that Congress would provide an opportunity for judicial review . . . of the factual components of a CAT order." *Id.* Based on this

passage from *Nasrallah*, the Fourth Circuit in *Williams* concluded that Congress did not intend § 1252(a)(2)(C) to prevent courts from reviewing "collateral" issues distinct from the factual bases of the underlying convictions. *Williams*, 59 F.4th at 629.

This reading of *Nasrallah* is not correct, nor does this passage in *Nasrallah* support our "on the merits" exception. The Supreme Court was clear that the first reason factual challenges to CAT orders were different from factual challenges to final orders of removal was because the "statutory text . . . differentiates between the two kinds of orders." *Nasrallah*, 140 S.Ct. at 1693. It is that textual analysis in *Nasrallah*—defining what qualifies as final orders of removal, and then making clear that judicial review does not extend to factual challenges to such orders—that is clearly irreconcilable with the reasoning and theory of our "on the merits" exception.

The remainder of the *Nasrallah* passage in question does not resuscitate the "on the merits" exception. There, the Supreme Court was discussing the types of factual challenges that are "usually" or "typically" associated with challenges to CAT orders and final orders of removal. *Id.* In making that descriptive observation, the Supreme Court was not laying down any kind of rule that factual challenges to "the merits" of a final order of removal remain reviewable notwithstanding § 1252(a)(2)(C). Such an interpretation would be directly contrary to the core holding and logic of *Nasrallah*, which is that when it comes to final orders of removal and orders that merge into them, "the court of appeals may not review *factual* challenges" because "the

relevant statutory text precludes" it.  *Id.* at 1690–91 (emphasis in original).[5]

## D

Because *Nasrallah* is clearly irreconcilable with our "on the merits" exception to § 1252(a)(2)(C), we hold that this exception should no longer apply.  Following *Nasrallah*, courts should now undertake the following straightforward analysis when deciding whether the criminal alien bar precludes judicial review.

Courts must first determine whether the denial of relief raised in a petition for review is part of the final order of removal or merges with it.  *See Nasrallah*, 140 S. Ct. at 1691.  If so, and if the petitioner is removable based on a conviction covered by § 1252(a)(2)(C), then we lack jurisdiction to review factual challenges to the final order of removal and may only review constitutional claims or questions of law under § 1252(a)(2)(D).  *See id.* at 1690–91; *see also Pechenkov*, 705 F.3d at 451–52 (Graber, J., concurring).  But if the denial of relief is not considered part of the "final order of removal," as is true with a CAT order, we can review

---

[5] We note that our decision today does not disturb the result in *Alvarez-Santos*.  *Unuakhaulu* and its progeny forged the "on the merits" exception based on an extension of the reasoning in *Alvarez-Santos*.  *See Pechenkov*, 705 F.3d at 450 (Graber, J., concurring) ("In *Unuakhaulu*, we took *Alvarez-Santos* a step further.").  But as we have discussed, the key issue on which *Alvarez-Santos* relied was that the IJ did not find that the petitioner was removable due to a conviction covered by § 1252(a)(2)(C).  *See* 332 F.3d at 1249.  *Alvarez-Santos* stands for the proposition that for the criminal alien bar to apply, there must be an agency "determination that the alien is removable" based on a covered conviction.  *Id.* at 1251.  We have no occasion in this case to decide whether *Nasrallah* or other intervening law changes this threshold requirement in *Alvarez-Santos*, which therefore remains intact.

factual challenges notwithstanding a criminal conviction that would otherwise implicate § 1252(a)(2)(C). *Nasrallah*, 140 S. Ct. at 1690–91.

We now recap how this framework applies in this case. As we explained in Part II.A, the denial of Tapia Coria's motions to remand and for administrative closure merges with her final order of removal. That is, a decision on those two motions would "affect the validity of the final order of removal" and would "disturb the final order of removal," and they are motions "on which the validity of the final order is contingent." *Nasrallah*, 140 S. Ct. at 1691. There is no dispute that, as a legal matter, Tapia Coria's conviction is a covered offense under § 1252(a)(2)(C). We therefore lack jurisdiction to review Tapia Coria's challenge to the BIA's factual finding that it is speculative whether and when Tapia Coria will obtain derivative U visa relief. We could have reviewed any constitutional claims or questions of law had Tapia Coria raised them. But she has not.

Accordingly, the petition for review is

**DISMISSED.**